ERNESTO APONTE, demandante y recurrido, *v.* CORTÉS EXPRESS E INSURANCE COMPANY OF PUERTO RICO, demandadas y recurrentes.

*Número*: R-71-312    *Resuelto*: 10 de enero de 1973

*Vicente Santori Coll,* abogado de las recurrentes; *Antonio Bauzá Torres,* abogado del recurrido.

PER CURIAM: En reclamación de daños ocasionados a un camión del recurrido en que por estipulación se admitió la negligencia de Cortés Express y los daños de hojalatería, ascendentes a $200, quedaron por dirimir en el juicio la naturaleza y cuantía de otros daños con motivo de los desperfectos ocasionados al diferencial del camión.

Concluyó el tribunal de instancia que:

"2.—El diferencial que sufrió los daños es uno del tipo U-200, y para la reparación del mismo se requería la suma de $1,320.00, que se desglosa en $235.00 costo del cónico, $480.00 costo de la catalina, $15.00 costo de grasas y juntas, más $600.00 por la mano de obra. El camión del demandante al momento del accidente tenía de 10 a 11 meses de uso. Era marca 'Reo'.

3.—A raíz del accidente, el demandante llamó a Cortés Express reclamando sus daños y luego notificó a la Compañía de Seguros. En vista de que la compañía de seguros no resolvía el problema optó por comprar un diferencial usado, el cual le costó $500.00. Dicho diferencial se lo vendió el Sr. Santana Ruiz el 23 de diciembre de 1966. Bajo condiciones normales de uso y cuidado el tiempo útil de vida de un diferencial varía dependiendo de la condición en que se encuentre, el uso que se le ha dado y si ha sido o no ajustado previamente. Un diferencial nuevo puede durar hasta quince (15) años. El primer diferencial usado instalado por el demandante apenas duró diez y siete (17) meses. Además fue necesario parar el camión por un intervalo de treinta (30) días para repararlo, ya que hubo que buscar el diferencial y luego instalarlo.

4.—El 5 de junio de 1968 se dañó el primer diferencial usado instalado, por lo que el demandante tuvo que comprar otro diferencial usado a Riozana Auto Parts, Inc., por la suma de $400.00. El Tribunal no va a entrar a considerar daños por pérdida de uso en este período, ya que en la demanda sólo se reclama $1,500.00 en esa partida. El 7 de diciembre de 1970, se daña este segundo diferencial usado y el demandante compra otro usado, a la Asociación de Camioneros Unidos, por el precio de $600.00. A la fecha de la vista este último diferencial estaba empezando a fallar. En todas estas ocasiones el demandante instaló la unidad completa. No hay prueba de que el demandante haya hecho mal uso del equipo o que no le haya dado el debido mantenimiento a dichos diferenciales.

5.—A la fecha de los daños, el demandante devengaba ingresos netos ascendentes a $60.00 diarios. Como consecuencia de los daños, y el intervalo entre éstos y la primera reparación, el demandante estuvo sin poder utilizar su vehículo durante veinticinco (25) días hábiles, lo que eleva a $1,500.00 en ingresos dejados de devengar.

6.—Después de haber instalado el primer diferencial usado, y aproximadamente dos (2) meses después del accidente, el testigo Pedro Alcaraz fue a ver el diferencial que sufrió el daño en el accidente, y aunque lo encontró en estado reparable, sin embargo, le recomendó a la compañía de seguros que pagara sólo el costo del diferencial usado aunque no sabía si éste último estaba en buenas condiciones. A los siete (7) meses del accidente, fue el demandante a ver al Sr. Roberts de la compañía Insurance Company of Puerto Rico. El demandante no fue atendido. Durante todo ese tiempo, el diferencial original pudo haber sido reparado, pero debido a sus gastos y necesidades, el demandante no pudo costear el costo de la reparación del diferencial que, como expresamos anteriormente ascendía a la suma de $1,320.00. El señor demandante optó por comprar diferenciales usados cuya vida útil varía dependiendo de las circunstancias antes menciona-das. El demandante trataba bien y con cuidado a su camión. Cabe señalar que el señor demandante pagaba la suma mensual de $553.00 por dicho camión, por lo que detenerlo en espera de que la compañía demandada viniera a resolver el problema, quizás hubiese significado la entrega del camión a la casa financiadora, ya que el señor demandante no estaba en condiciones de hacer dicho pago. Estimamos que el señor demandante fue diligente y que aunque de esa manera—mediante la compra de tres dife-renciales usados—aminoró los daños, el problema de su camión persiste pues dichos diferenciales se le han dañado. El último que le puso ya estaba fallando. Un diferencial nuevo—como el que tenía el camión al momento del accidente—hubiese durado hasta quince (15) años."

Como resultado de tales conclusiones, el tribunal de instan-cia condenó a los recurrentes a pagar al recurrido, en adición a los $200 por reparación de la hojalatería del camión, $1,320 por los daños sufridos por el diferencial dañado debido al accidente, $1,500 por los tres diferenciales usados instalados en el referido camión más $1,500 por pérdida de uso y ganan-cia dejada de devengar por el recurrido.

Se apunta que el tribunal de instancia incidió al conceder $1,500 por el costo de los tres diferenciales; al concluir que los

ingresos netos del recurrido eran $60 diarios; y que sufrió una pérdida del uso del vehículo por 25 días hábiles.

Es evidente de dichos apuntamientos que no se impugna la concesión de $1,320 por los desperfectos ocasionados al diferencial original instalado en el camión con motivo de la colisión con el vehículo de Cortés Express.

A los fines de resolver, es necesario hacer referencia a determinados hechos sobre los que testificó el recurrido. En cuanto a sus ingresos, testificó como sigue:

"Podría decirnos cuánto usted ganaba utilizando ese camión para cargar cemento a granel para la fecha del accidente?

Bueno hay veces que uno da tres o cuatro viajes y eso reporta $100.00 diarios.

Y esos cuatro viajes los daba al mes al día?

Se dan todos los días.

Cuánto le deja limpio en la utilización de dicho camión diario en el negocio del acarreo de cemento, cuánto le dejaba para la fecha del accidente, para el 1966?

Pues eso podría dejarme limpio como $60.00 ó $65.00 ó $70.00 pesos todos los días.

Diario?

Sí.

A raíz del accidente, cuánto tiempo estuvo sin utilizar el camión mientras el mismo fue reparado?

Tuve como cerca de 25 días porque tuve como 15 días esperando, verdad, porque me vinieran a reparar el truck y como no vinieron tuve como 5 ó 6 días en buscar el diferencial y después lo compré y en lo que se montó y todo eso pues. . . ."

Más tarde, en contrainterrogatorio, testificó así:

"Usted rinde planilla de Income Tax?

Sí, rindo planilla.

Usted para esa época, eso fue en el 1966, en Diciembre, ya finalizado el año, usted rindió planilla para esa época?

Sí.

Y cuánto pagó de Income Tax?

No pagué nada porque no me sobraba, al contrario, estaba embrollado pagando $543.00 mensuales, que apenas me sobraba y después las gomas que valen a $225.00.

Y usted no pagaba nada más de Income Tax, rindió planilla, pero no pagó?

No.

A pesar de que ganaba $3,000.00 al mes?

Sí, señor.

HON. JUEZ:

Cuál fue la pregunta?

LCDO. SANTORI:

A pesar de que ganaba $3,000.00 al mes.

HON. JUEZ:

El dijo que él pagó Income Tax?

LCDO. SANTORI:

Que no pagó Income Tax ese año del 1966.

El accidente ocurre en Diciembre del 1966, que fue a finales del año, y ese año del 1966 no pagó nada de Income Tax, a pesar de que ganaba $3,000.00 al mes?

LCDO. BAUZA:

El señor explicó la razón.

LCDO. SANTORI:

Sí, que las gomas costaban mucho.

TESTIGO:

$225.00.

LCDO. SANTORI:

Y usted tenía que pagar la mensualidad del vehículo, verdad?

Sí, señor.

Que eran cuánto, $543.00?

Sí, señor.

Por eso era que usted no podía?

No.

Y en el 1965, también pagó Income Tax, el año antes?

No lo pagué. Durante esos tres años no pude pagar. Es más, que saqué una libreta de cheques en el Banco y tuve que retirarlo.

.     .     .     .     .     .     .     .

Usted tenía necesidad de utilizar el camión?

Sí, señor.

Usted no tenía otra forma de ingreso de vida para obtener sus ingresos?

De ninguna especie.

Qué usted hizo cuando cambió el diferencial con las piezas del diferencial nuevo?

Las dejé allá para que las fueran a arreglar."

De la lectura de la transcripción resulta aparente que el recurrido reclamaba un diferencial nuevo de la recurrente aseguradora.

■ Bajo la norma de minimizar los daños, el recurrido no estaba obligado a esperar 15 días, como esperó, para que los agentes de la aseguradora vinieran a examinar el diferencial damnificado y determinar si era reparable o había que reponerlo. Al igual que lo hizo el mecánico de la aseguradora dentro de la inusitada e irrazonable tardanza de 2 ó 3 meses después del accidente, el recurrido pudo cerciorarse, con razonable prontitud, con su propio mecánico, de la rotura del cónico y la catalina del mismo del costo de esta reparación y que dicha reparación tardaría de 2 a 3 días. No hubo prueba de que el recurrido estuviese económicamente impedido de costear esta reparación. Sólo hubo prueba de que tenía necesidad de utilizar el camión pues no tenía otra forma de vida para obtener sus ingresos.

■ Es necesario aclarar, sin embargo, que en casos en que las reparaciones sean tan costosas que estén fuera del alcance de los medios económicos del dueño del vehículo damnificado debido a la negligencia de otra persona asegurada contra ese riesgo, la norma de minimizar los daños no debe imponerle al reclamante el deber imposible de realizar las reparaciones necesarias con prontitud. Más bien, en estos casos, es obligación de la aseguradora, con el fin de aminorar su responsabilidad, proceder con prontitud, luego del accidente, a investigarlo, determinar quién fue el causante del accidente, qué daños se causaron y, aceptado que la causa fue la negligencia del asegurado, proceder a ofrecer reparar el vehículo con el fin de restaurarlo a su condición de antes del accidente, siendo responsable, por supuesto, en los casos en que el vehículo constituya el medio de vida del reclamante, por el ingreso que éste

ha dejado de percibir durante la tardanza no atribuible al reclamante, hasta que se haya reparado el vehículo.

En el caso ante nos, es evidente que el recurrido pudo determinar la naturaleza de los desperfectos sufridos por el diferencial original con motivo del accidente dentro de 24 horas y, en ausencia de prueba en contrario, pudo ordenar la reparación requerida en seguida de manera que la tardanza que en este caso hubiera sufrido, se limitara a cuatro días. Se deduce de esto que sólo dejó de percibir ingresos por la cuantía de $240 (o sea, a razón de $60 durante cuatro días). La tardanza de 25 días hasta que logró instalar el primero de los tres diferenciales y todo el costo de esto resultó innecesario y, en derecho, irrecobrable. Por el contrario, estas inútiles gestiones eran más bien demostrativas de que el recurrido sólo reclamaba un diferencial nuevo y no la reparación del original y de que esta reparación no estaba fuera del alcance de sus medios económicos.

En tal virtud, *se modificará la sentencia dictada en este caso por el Tribunal Superior, Sala de Guayama, en 29 de noviembre de 1971, a los fines de eliminar de la misma la concesión de $1,500 por tres diferenciales y reducir la cuantía de los daños por ingresos dejados de percibir a $240.00.*

Los Jueces Asociados Señores Dávila, Martínez Muñoz y Martín, concurren en el resultado.