If the truck *in any manner* facilitates the illegal condition.

9. In *Cadillac*, as in the case at bar, Defendant just transported men near and far,
But this was sufficient
To make claimant's trade more efficient
And therefore justified seizing the car.

10. Thus the *Cadillac* case this Court will follow,
Renders claimant's contention hard to swallow,
And the Court will now render
Judgment against the defender
Because claimant's contentions are hollow.

11. Now the moral in this case 'bout the truck,
Is easy, in case you are stuck,
If in an illegal endeavor
A vehicle is used whatsoever,
Then, my friend, you are clear out of luck.

## JUDGMENT

IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED that plaintiff shall have judgment against defendant on plaintiff's complaint.

**COMPUTEC SYSTEMS
CORP., Plaintiff,**

v.

**GENERAL AUTOMATION,
INC., Defendant.**

**No. Civ. 78–1076CC.**

United States District Court,
D. Puerto Rico,
San Juan Division.

Dec. 20, 1984.

Harry Segarra-Arroyo, Nachman & Fernández-Seín Law Office, Santurce, P.R., for plaintiff.

Maggie Correa-Avilés, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, Law Office, San Juan, P.R., for defendant.

1. This case was temporarily stayed pending the resolution of a constitutional challenge to the Dealer's Act. Both the Commonwealth and federal court upheld its constitutionality.

2. This amount is detailed in paragraph 12 of the complaint as follows:

"(a) Present value of common stock issued, space, furniture, fixtures, equipment, leasehold improvements, loans and interest, and expenditures to promote defendant's products —$150,000.

## OPINION AND ORDER

CEREZO, District Judge.

This is a diversity action for breach of a distributorship agreement under the Puerto Rico Dealers' Act, *P.R.Laws Ann.*, Tit. 10 Secs. 278 *et seq.* (Law No. 75) and for damages arising from slander of business reputation under Article 1802 of the Puerto Rico Civil Code, *P.R.Laws Ann.*, Tit. 31 Sec. 5141, and the libel and slander provision of *P.R.Laws Ann.*, Tit. 32 Secs. 3141–3149. The complaint was filed on June 8, 1978 [1] and is based on two distinct causes of action stemming from events occurring at separate times. In its Law 75 action plaintiff seeks compensation in the sum of 850,000 [2] for the alleged without just cause termination of its dealer's relationship with General Automation, Inc. The other action is based on defamatory remarks on the manner that plaintiff conducted business allegedly made by defendant to a third party after termination. Damages in the sum of $150,000 to plaintiff's reputation, credit and standing in the business community are claimed. Before us now is a Motion to Dismiss Plaintiff's Claims for Damages Under Act 75 filed by defendant and duly opposed by plaintiff. The primary contention, that the damages provided by the Dealers' Act are exclusive of any others, is erroneous. The record reveals that this is not the first time that defendant has tried to advance this theory. Defendant, although mistaken in its basic premise that there are absolutely no recoverable damages in this case under Law 75, is correct in sustaining that many of the damages claimed have no basis.

The prior motions [3] for summary adjudication of the complaint or of some of its

(b) Projected earnings for five years from the date of breach—$500,000.
(c) Loss of good will with potential customers and with other computer manufacturers, and loss of one year's ability to reenter the computer market—$200,000."

3. Motion to Strike filed on September 5, 1978; Motion for More Definite Statement, filed on September 6, 1978; Motion for Summary Judgment filed on November 3, 1980 and Motion for Reconsideration and/or Certification to the Su-

allegations present a good profile of the claims before us. The record shows that the plaintiff corporation was formed in early 1977 for the purpose of selling computers and complementary products in Puerto Rico. After several communications with defendant during the second half of 1976, contained in various letters in the record, plaintiff signed a contract on February 23, 1977. It was agreed that plaintiff would "develop and expand in Puerto Rico and the U.S. Virgin Islands with a right of first refusal to the Dominican Republic (hereinafter called "territory") the market for and sales or leases of /defendant's/ ... products in and *for use in* the territory...." It was specifically stated in the agreement that as part of the distributor's duties it would send maintenance and installation technicians as well as a programming technician to defendant's training center in Anaheim, California, to handle the programming aspects of defendant's computers and its software license agreement ("software technician"). The distributor also had "to provide and maintain at its own expense an efficient installation and maintenance service capability for all /defendant's/ products installed in territory ... perform warranty repairs...." and maintain an inventory of spare parts. It was also agreed that plaintiff would buy a demonstration computer system and install it at its offices to be used for "customer training, program generation and customer support." The dealership contract expressly subjected sales made outside of, but for use in, the territory to a special agreement[4] and it did not include sales made to original equipment manufacturers (OEM).[5] Plaintiff did send a computer programmer it had hired to defendant's training center, but it did not send the installation and maintenance technician because it had not been able to hire one. The demonstration computer, although informally requested when plaintiff signed the agreement,[6] had not been formally ordered through a letter of credit charge as was stipulated in the agreement.

The major source of dispute between the parties, however, arose when ITT Island Finance, a unit of ITT Financial Corporation, invited defendant to submit a proposal for a system to automate its branch offices in Puerto Rico and the U.S. Virgin Islands. Apparently plaintiff wanted to participate in the sales proposal but defendant insisted that the sale was beyond the contract's scope for it was to be made outside Puerto Rico and to an OEM entity. Even though plaintiff admitted that the sale was to be made outside Puerto Rico, it rejected the view that it would be made to an OEM entity arguing that the computers were to be bought for Island Finance Corporation "for their own use as stand-alone systems" and not "for resale, lease or rental to third parties as part of a larger system" as OEM sales are defined in the agreement. Plaintiff threatened to terminate the dealership and seek judicial action unless it was offered a suitable "special agreement" for the ITT sale proposal. Defendant replied that the proposed sale would be made to ITT Corporate, New York, and that ITT would then sell to Island Finance in Puerto Rico. Defendant indicated that the reference in the contract to a special agreement for sales outside Puerto Rico did not specify the conditions of said agreement but was merely intended to provide the opportunity for the parties to agree by a special arrangement on the terms and conditions of service and support systems that plaintiff could provide to sales made outside

---

preme Court of Puerto Rico filed on November 4, 1981.

**4.** The contract states: "Other situations such as sales *in* for *use outside* or sales outside for *use in* the territory will be subject for /sic/ special agreement between the parties as to what conditions are applicable."

**5.** Defined by the contract as: "A manufacturer of computer or other systems who purchases

products for resale, lease or rental to third parties as part of a larger system."

**6.** Plaintiff's principal Mr. Víctor Soltero had told defendant during his visit to Anaheim the type of equipment arrangement that he wanted for the demonstration computer. Although plaintiff appears to have obtained a letter of credit there is no indication in the record that it ever placed an order against said letter of credit in the manner provided for by the contract.

Puerto Rico but for use therein if such customers desired service and systems support in Puerto Rico. It suggested that plaintiff submit an offer for the maintenance of the computers ·that were to be sold to ITT for use in Puerto Rico, and, if the offer was reasonable, it would be included as part of the proposed bid to ITT. However, no agreement was reached on this matter and the relationship deteriorated. In a letter dated June 27, 1977 defendant notified that it was formally canceling the dealership in view of plaintiff's inability to honor the agreement. Among the causes for termination reference was made to plaintiff's failure to send a maintenance and installation technician to defendant's training center, its failure to buy a demonstration system or to send sales forecasts and reports and the failure to develop an installation or maintenance service capability.

The legal issues spawned by these disputes deal mainly with defendant's claims of lack of substantial damages as to both causes of action and the existence of just cause to terminate the contract.[7] Plaintiff states that the alleged breaches of its duties as distributor are nothing more than "afterthought excuses" to justify a cancellation that was promoted essentially by defendant's refusal to permit it to participate in the ITT sale proposal. It contends that the sales forecasts and reports required by the agreement were made verbally by phone and that it had not hired a maintenance man to be trained by defendant because it was awaiting the shipment of the demonstration computer system it had ordered verbally on February 1977. It concludes that the hiring and training of such an employee was not an essential element of their obligations.[8]

7. Defendant also contended that plaintiff was not a "dealer" within the meaning of the Act because it never bought any of defendant's products, never sold any of defendant's products nor kept an inventory of equipment or spares. Defendant thus concludes that plaintiff did not create a market in Puerto Rico and was not effectively in charge of a dealership. It points to *Sudouest Import Sales v. Union Carbide,* 569 F.Supp. 1547 (DPR 1983) where emphasis was placed on the capacity to be effectively in charge of the distribution of a product. Aware of this construction of the term dealer, we refer plaintiff to our Circuit's opinion affirming *Sudouest* and to our decision in *Mario Franceschini, Inc. v. The Riley Co.,* Op. of July 11, 1984 and cases there cited where such concept was explored. The facts of this case differ from the situation in *Franceschini.* The key element is capacity and not whether the dealership was carried out adequately or not. The provisions in the Act for just cause and damages address the question of *how* the dealership was carried out. If no sales were made because of the dealer's own fault (even though the dealer could in effect make them), then the question is not that there is no dealership but rather whether the existing one was terminated by just cause—lack of sales. In this case, the contract clearly gives plaintiff the power and the capacity of an Act 75 dealer. Whether these powers were carried out effectively or not is another matter.

As to the slander of business reputation action, defendant presented an affidavit by the third-party recipient of the allegedly defamatory remarks indicating that no such statements were made by defendant and that it was plaintiff instead who commented unfavorably of defendant. The affiant adds that, in any event, he did not introduce his line of computers in Puerto Rico; not to plaintiff or anyone else. Plaintiff countered by pointing out that the affiant's past statements to it showed that after some "back room" activity with defendant the affiant's firm decided not to appoint plaintiff as distributor of their line of computers and that this contradiction casts a shadow on affiant's credibility.

8. An examination of the pre-contract-stage correspondence in the record reveals, however, that defendant conveyed to plaintiff since 1976 that the training of an installation and maintenance (hardware) technician was a necessary initial step in the dealership of defendant's computer for plaintiff had to have an employee capable of installing the equipment sold in Puerto Rico. By letter of September 20, 1976 defendant's Mr. Bress responding to the initial inquiries about the possibility of a dealership stated:

"Installation Assistance
We time the first system shipment to a new distributor after his customer engineer has attended our free 7-week maintenance class. This training fully prepares a competent electronic technician to make all installations."
And by letter of November 10, 1976:
"My understanding for your appointment as our distributor is for you to hire a technician and schedule him for training plus schedule a man for software training. The next step is

On the matter of damages it should be noted that as early as September 1978 defendant raised the theory that the enumeration of damages found in section 278b [9] of the Act is preclusive of all others. On September 5, 1978 it filed a Motion to Strike alleging that the *ad damnum* allegations be stricken since damages not included in the Act's listing were being requested. By Order of October 17, 1978 (Torruella, J.) the Court rejected defendant's contention stating:

> Defendant additionally seeks to strike the *ad damnum* allegations of the second claim for relief. Its argument is simply that the only damages affordable in this litigation are those spelled out in the Dealer's Act at 10 LPRA Sec. 278(b). We fail to find any authority in this record for defendant's proposition. First, both claims for relief may be read separately. The Dealer's Act claim for relief is centered on the termination of the contract itself. The libel and slander claim for relief is based upon acts allegedly occurring after the distribution contract had already terminated. Second, we find that the claim for relief based on libel and slander is neither "redundant, immaterial, impertinent nor scandalous" within the meaning of Rule 12(f), Fed.R.Civ.Proc. Since the two claims may be subjected to the above interpretation and on their face they do present a cognizable claim, the affordability of any damages for libel and slander is, thus, a matter best adjudicated with the examination of the merits.

Reconsideration of that order was sought on the ground that what had been requested was the striking of the ad-damnum pleading of the first cause of action because Act 75 did not provide for such damages. This motion was never ruled upon and defendant filed its answer to the com-

---

for you to order a system and spares. I will agree to extend delivery up to six months to give you time to start a sales campaign." At this early stage defendant also told plaintiff that a potential customer in Puerto Rico was concerned with whether defendant could provide local maintenance service and defendant had suggested to this customer that plaintiff could provide such service. Throughout their brief commercial relationship defendant also asked plaintiff whether its hardware technician was ready for the training and that the demonstration system it had verbally requested was ready for shipment but they were awaiting the letter of credit order. There is no indication in the record that plaintiff ever placed said order through a command for payment by its letter of credit nor is there evidence that it told defendant that it could not hire the hardware man until it had the demonstration computer in Puerto Rico. The record only reveals that plaintiff hired a software technician whom it did send to training in California. However, according to defendant's Mr. Bress when a shipment of $45 in instructional materials was sent to plaintiff at the software technician's request, plaintiff refused to pay and the shipment was returned.

**9.** Said section indicates:

> If no just cause exists for the termination of the dealer's contract for detriment to the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him, the amount of such indemnity to be fixed on the basis of the following factors: (a) the actual value of the amount expended by the dealer in the acquisition and fitting of premises, equipment, installations, furniture and utensils, to the extent that these are not easily and reasonably useful to any other activity in which the dealer is normally engaged; (b) the cost of the goods, parts, pieces, accessories and utensils that the dealer may have in stock, and from whose sale or exploitation he is unable to benefit; (c) the goodwill of the business, or such part thereof attributable to the distribution of the merchandise or to be render be rendering of the pertinent services, said goodwill be determined by taking into consideration the following factors: (1) number of years the dealer has had charge of the distribution; (2) actual volume of the distribution of the merchandise or the rendering of the pertinent services and the proportion it represents in the dealer's business; (3) proportion of the Puerto Rican market said volume represents; (4) any other factor that may help establish equitably the amount of said goodwill; (d) the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be.

plaint. In its earlier Motion for Summary Judgment defendant questioned plaintiff's capacity as an Act 75 dealer, focused on its reasons for termination and again challenged the damages requested as inexistent or unrecoverable. It charged that goodwill did not exist since no sales, hence no profits, a central element for the determination of this intangible were ever made. It also challenged the ability to recover for expenses incurred in equipment, furniture and leasehold when these items were or are being currently used in plaintiff's actual distribution of several lines of computers and the Act limits recovery to those situations where they may not be used for the business that the dealer is normally engaged in.

Plaintiff's position on the issue of damages has always been that the listing of the statute is not exclusive and that difficulty in determining their exact amount should not be an obstacle to their entitlement and award. It seeks to recover the investment made in equipment, furniture and leasehold because it was inactive for almost a year trying to obtain a new line of computers. Defendant's Motion to Dismiss the Claims for Damages Under Act 75 raises once more the issue of whether plaintiff is entitled to the damages claimed in view of the Dealer's Act enumeration of recoverable damages.

It is important to understand that the procedural context in which we are making our analysis provides certain guidelines which are quite different from those one must apply to the facts in a trial setting. Previous requests for summary disposition were denied since, in that procedural context and under applicable guidelines, resolution of material issues of fact, i.e., whether there was "just cause" for termination, causal relationship, extent of damages, was not possible. None of these rulings are to be interpreted to signify that defendant's stated reasons for termination were insufficient to constitute just cause, that the ITT sale was a breach of the agreement, that damages were caused by unjustified acts or that damages add up to the sums claimed. The previous rulings mean only that these issues are still marred by controversy and require thrashing them out in a plenary hearing.

In its Motion to Dismiss the Claims for Damages Under Act 75 defendant relies on *Marina Industrial, Inc. v. Brown Boveri Corporation,* Op. of March 18, 1983, —— DPR ——, 83 JTS 31 in support of its *expressio unius est exclusio alterius* theory. Plaintiff counters that under *Producciones Tommy Muñiz, Inc. v. Comité Organizador de los VIII Juegos Panamericanos* (COPAN), Op. of November 9, 1982, —— DPR ——, 82 JTS 151, it is entitled to recover all damages stemming from the reasonable expectancy it had on the continuation of the dealership and that this recovery is based on an Article 1802 *ex delictu* cause of action. *P.R.Laws Ann.,* Tit. 31 Sec. 5141. Both parties' interpretation of these relatively recent Puerto Rico Supreme Court decisions is incorrect. The *Marina Industrial* decision does not stand for the proposition that the listing of damages of Act 75 is exclusive. It only holds that the damages listed by the legislator are mere guidelines to be used by courts depending on the facts of each case. They are not to be imposed automatically without their being proven and connected to the breach of contract or detrimental act. The Court said: "The factors enumerated are merely guidelines to determine the amount of damages and do not oblige the court to automatically award an indemnity applying each and every one of the factors." JTS at p. 3094 (our translation). This comment arose in the context of an unconstitutional taking-of-property challenge to this provision of the law and in a situation where it was claimed that the items of damages listed in the Act would be imposed *automatically* once an unjustified breach of the dealer's contract was shown. Likewise, the *COPAN* case is inapplicable. It arises out of the need perceived by the Supreme Court of Puerto Rico to regulate the *pre-contract* stage of negotiations against bad faith conduct and abuse. Since the court could not find that the parties had entered into a valid contract at this stage, liability

was founded on tort.[10]  In our case, the relationship of the parties, their duties, rights and liabilities stem from the dealership contract and the provisions Act 75.

We find nothing in the *Marina Industrial* opinion or other relevant Act 75 case law, nor in the wording of the statute or its legislative history to suggest that the list of damage factors be read as exclusive of all others.  On the contrary, the Act provides for a liberal interpretation in furtherance of the remedial considerations behind it.  *P.R.Laws Ann.* Tit. 10 Sec. 278c. There being no specific command for exclusivity in the special law or its authoritative interpretations, Article 12 of the Civil Code, *P.R.Laws Ann.*, Tit. 31 Sec. 12 [11] directs us to supplement the special law with the general provisions of the Civil Code.  *See gen.: Housing Investment Corp. v. Alberto J. Luna,* Op. of Feb. 26, 1982, ── DPR ──, 82 JTS 22. The special law, in this case the Dealer's Act, can and should be supplemented by those provisions in the Code which may be applicable.  *Sierra v. Trib. Superior,* 75 DPR 841, 846, 75 PRR 792, 797 (1954).  Damages arising from breach of contract as well as those arising from the negligent performance of any type of obligation are recognized by the Civil Code as compensable.  *P.R.Laws Ann.,* Tit. 31 Secs. 3018 and 3020.[12]  *See: Ramírez Ortiz v. Gautier Benítez,* 87 DPR 497, 503 n. 16, 87 PRR 470, 495 n. 16 (1963); *González Mena v. Dannermiller Coffee Co.,* 48 DPR 608, 614, 48 PRR 590, 596 (1935).  The Code provides that the compensation include not only the losses suffered but also "the profit which the creditor may have failed to realize."  *P.R.Laws Ann.,* Tit. 31 Sec. 3023.  With regard to a breach or negligent performance of a contractual obligation,[13] the Code specifies that a debtor

10. In any event the COPAN opinion is noticeably silent on the aspect of what sort of damages may be recovered from this "new" action. A dissident opinion appears to suggest that only expenses and not expected earnings are recoverable if no bad faith is found.  *See* Dissident Opinion by Díaz Cruz, J., JTS at 2918.

11. Said article states: "In matters which are the subject of special laws, any deficiency in such laws shall be supplied by the provision of this title."

12. Section 3018 indicates: "Those who in fulfilling their obligations are guilty of fraud, negligence or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnity for the losses and damages caused thereby." Section 3020 states: "Liability arising from negligence is also demandable in the fulfillment of all kinds of obligations; but it may be mitigated by the court according to the case."

13. Plaintiff has placed much emphasis on the reference in section 278b of the Act that if there is no just cause for the termination or detrimental act "the principal shall have executed a tortious act against the dealer" to classify the substantive elements of its claim under Act 75 as one more analogous to an *ex delictu* action than to an *ex contractu* one.  Although in the present case it makes no significant difference whether we supplement the deficiency in the Act with the applicable provisions from the general law of contract or from the general principles of tort liability, for the damages claimed, if in fact they are proven, are recoverable under both sources of liability and were foreseeable under both standards of foresseability.  *See:* III, Santos Briz, J., *Derecho Civil Teoría y Práctica,* pp. 516–528 (Ed.Rev.Derecho Privado 1973) *and compare: Díaz Torres v. Rivera,* 96 DPR 560, 96 PRR 548 (1968); *Rodríguez v. John Hancock Mutual Life,* 110 DPR 1, 110 PRR 1 (1980) to *Ginés Meléndez v. Autoridad,* 86 DPR 518, 86 PRR 490 (1962); *see also: Lexington Insurance Co. v. Abarca Warehouse Corp.,* 476 F.2d 44 (1st Cir.1973) and *Compagnie Nationale Air France v. Castano,* 358 F.2d 203, 207 (1st Cir.1966), we merely point out that an integrated reading of the Dealer's Act reveals that it was designed to remedy obligations arising from a contract in the many forms such a legal generator of duties may take.  The reference to having "executed a tortious act" appears to have been merely an additional assurance imparted by the legislator to the Act in order to guarantee that Puerto Rico courts could attach personal jurisdiction to out of state principal by construing the breach as a tort for long arm jurisdiction purposes.  *See:* Colón & Colón, El Contrato de Distribución o de Agencia Comercial, 27 Rev.D.P. 225, 256 (1968). We believe resort to the more kindred juridical figures of contract law will better illustrate the type of problems that may arise from these relationships which in practical terms rest more on a contractual rather than an *ex delictu* type of foundation.  In this sense, it may be that the legislator meant to equate terminations or detrimental acts without just cause to breach or performance of an obligation in a dolus manner which carries a broader scope of damages similar to that ascribed to Article 1802 violations. *See: P.R.Laws Ann.,* Tit. 31 Sec. 3024; *González*

in good faith shall be liable for those losses and damages which were foreseen or which could have been foreseen at the time the obligation was constituted and which may be a necessary consequence of its nonfulfillment while in a case of fraud (dolo) "the debtor shall be liable for all those which clearly may originate from the nonfulfillment of the obligation." *P.R.Laws Ann.*, Tit. 31 Sec. 3024. However, in order to enable a court to issue an award of damages the creditor must prove their existence, their relationship to the act complained of and their value. *Rodríguez v. Serra*, 90 PRR 776, 779, 90 PRR 755, 758 (1964); *Ferrer v. Pueblo*, 14 DPR 509, 512, 14 PRR 497, 499 (1908). Unless the damage claimed is proven to have in fact existed and to have been related to the injurious act, no compensation can be awarded, for Puerto Rico law does not sanction punitive damages. *See: Pérez v. Sampedro*, 86 DPR 526, 530; 86 PRR 498, 503 (1962). In *Suárez v. Suárez*, 47 DPR 97, 104, 47 PRR 93, 99 (1934) the court refused to award damages on the loss of profits on a plot of land that did not belong to the claimant and in *González v. Centex Constr. Co.*, 103 DPR 82, 103 PRR 116 (1974) the court refused to award the amounts needed to repair a house when it was no longer owned by the plaintiff. In *Masa v. PRWRA*, 76 DPR 856, 873, 96 PRR 834, 851 (1969), expenses incurred in special nursing services were not compensated for the claimant failed to prove their need in relation to the injury suffered. Although once the reality or existence of the damage and its connection to the detrimental act or breach is proven its exact valuation need not be established with mathematic certainty, its calculation must at least rest on a reasonable basis and not on mere speculation or guess. *White Star Bus Line, Inc. v. Glenn Falls Indemnity Co.*, 60 DPR 852, 861, 60 PRR 830, 839 (1942). In terms of profits failed to realize, or *lucro cesante*, the claimant must prove that these in

fact existed, *see: Soegard v. Concretera Nacional, Inc.*, 88 DPR 179, 184–187, 88 PRR 174, 179 (1963) (where damages due to lost profits were denied because plaintiff did not prove that he was unable to sell the merchandise eventually), that they were frustrated because of the debtor's conduct, *see: Hau v. Rodríguez*, 90 DPR 15, 19, 90 PRR 15, 19 (1964) (the interest paid was not considered as damages stemming from the breach) and that they can be estimated on some reasonable basis that must be provided by the claimant, *see: Dávila v. Aut. de Tierras*, 78 DPR 859, 866, 78 PRR 817, 824 (1953) (lost profits on frustrated sale of cattle were not awarded because plaintiff failed to present proof on the value of the livestock it could not sell), such as the profits previously made by the claimant in a similar period and circumstances. *Muriente v. Terrasa*, 22 DPR 738, 747, 22 PRR 686, 694 (1915), *cf.: Velázquez Lozada v. Ponce Asphalt, Inc.*, Op. of May 28, 1982, —— DPR ——, 82 JTS 89 ("the mere possibility of future profit without acts that determine at least an ostensible and deliberate purpose of their effective exercise, does not offer a judicial basis for an award of damages...." (Our translation.)) For example, in *González Mena v. Dannermiller Coffee Co.*, 48 DPR 608, 48 PRR 590 (1935) the Supreme Court awarded damages to plaintiff for the profits lost from the sale he was to make of a shipment of coffee which defendant had erroneously sold to another party. The court concluded that the lost profits could be recovered for plaintiffs had already sold the shipment of coffee to third parties. It refused, however, to award plaintiff any additional lost profits for the period (one year) after the shipment in which he claimed that damage to his commercial reputation by defendant's act had also affected his future sales. In distinguishing the two items of damages the Court said:

> The plaintiff claims, clearly and definitely, the difference between the sale price

---

*v. Dannermiller,* at 596. We need not determine such matter for the damages claimed are recoverable under a contractual, good faith-breach type of claim for damages standard of foreseeability, i.e., "those foreseen or which may have been foreseen at the time constituting the obligation and which may be a necessary consequence of its nonfulfillment." Sec. 3024.

stipulated in the contract and the price agreed with his clients, to which he has a perfect right; but then he goes further and alleges that, by reason of the conduct of the defendant, the clients of the plaintiff lost confidence in him and ceased doing business with him, causing him to lose $2,000 in profits which he would have made from said clients in a year. On these vague and indefinite generalities, the plaintiff claims profits which he considers he might have realized, without even mentioning the existence of any agreement to sell coffee to his clients during the time stated. We do not know the plaintiff's ground for claiming the profit which he might have realized in a year. Similarly as he has fixed this period of time, so he could have extended it or shortened it to suit his fancy, and could even have made his claim for an indefinite period. We do not believe that these damages can be included in the category of those which might have been foreseen at the time of constituting the obligation, and which are a necessary consequence of the breach of contract.

*Id.* at 599.

■ It is also part of the Puerto Rico general law of damages that the claimant must take the necessary steps to reduce or contain the damages suffered, *Soc. de Gan. v. Gerónimo Corp.*, 103 DPR 127, 134 (1974), 103 DPR 179, 187; *Aponte v. Cortes Express*, 101 DPR 31, 36, 101 PRR 45, 52 (1973), unless the situation is one in which no such amelioration is possible. *Id.*

When these concepts from the general law of damages and the guidelines provided by the Act are applied to the damages claimed here it appears that some of the items are difficult if not impossible. to award for not only is their computation based on speculation but their very existence rests on very fragile grounds. Other items are clearly exaggerated in the amount claimed. Nevertheless, at this moment most of the items claimed remain controverted. Let us examine each of the items of damages claimed in order to explore their triable aspects or their clear inapplicability.

■ Complete recovery of the actual value of all of the equipment, furniture, fixtures and leasehold improvements which are now being used or were used by plaintiff to distribute other lines of computers would run counter to the Act's provision that reimbursement shall be only "to the extent that these are not easily and reasonably useful to any other activity in which the dealer is normally engaged." The same holds true for that item of damages of the Act that provides for recovery of profits during the last five years five times the profit of the year previous to termination, *P.R.Laws Ann.*, Tit. 10 Sec. 278(b)(d), for no profits were made during the brief period of this contractual relationship, as shown by plaintiff's financial statement. However, as to those items acquired to distribute defendant's product and which were allegedly useless for a certain period of time, is their depreciation during that period compensable? The determination of this item of damages requires that two periods of time be considered: one, during the existence of the relationship and, the other, after termination and until plaintiff obtained another line of computers to sell. In the first period plaintiff could recover, subject of course to a finding that termination was without just cause, the depreciation of the equipment and furniture, rent paid and any other investment which cannot be used now if such investments are shown to have been necessary to carry out the business. As to the second period, in order to be able to recover the depreciation costs of these items plaintiff will additionally have to prove that it was unable to sell the equipment, cancel the lease and move to a smaller office or sublease the space, that it did not obtain any profit during this period and that it in fact devoted all this time to obtain a new dealership.

■ As to the amounts invested for training of its employees plaintiff must first prove that all of this training was necessary to carry out the dealership and that it was entirely useless for the business

it is now engaged in. Regarding the lost profits aspect of the damages claim, it must establish a reasonable basis for its determination. In the present case there are no profits on which to base expected earnings because no sales were ever made. Perhaps this was due to the short duration of the dealership and the nature of the product, to the termination itself or to plaintiff's incompetence. There is no way of knowing at this time. Plaintiff has the burden of establishing that the proposals it allegedly made to several prospective buyers were in fact going to result in sales *but for* defendant's decision to terminate. It must also establish the profit it was expected to make on each of these sales. If the feasibility of those proposals ever turning into actual sales is not established, these damages for loss of expected profits cannot be awarded. If on the other hand, these proposals are proven to have been in fact sales which were frustrated by defendant's acts, then expected profits could be awarded. However, the damage item provided by Section 278b(d) of the Act (five times the amount of profits obtained) as well as the goodwill provision of Section 278b(c) are not recoverable for no profits were made as admitted by plaintiff. Goodwill cannot be considered on an abstract basis independent from the business itself and its assets. *Yumet v. Trib. Superior*, 80 DPR 680, 80 PRR 567 (1958). Plaintiff has not provided any satisfactory authority to support the proposition that goodwill can be determined on such a speculative basis as that shown in this record.

■ As to the two million dollar proposal to ITT, suffice it to note that the record reveals that defendant's proposal was not accepted by ITT. Thus, any "expected profits" that plaintiff may be contemplating to recover from this transaction are not recoverable for the "sale" just never took place.

In sum, if it is adequately established that defendant terminated the contract without just cause and if plaintiff can es-tablish the reality of the damages claimed, their relation to the breach and their value, it would, technically, be entitled to the following items: the depreciation of the necessary equipment, furniture, etc., during the four-month relationship and during the necessary time thereafter to continue selling computers, the necessary expenses incurred during the dealership that could not be used by the present business and those necessary after termination to obtain a new computer line, the amounts invested for training which may not benefit the present business and the amount of expected earnings from any sales it can prove were going to be actually carried out had it not been for defendant's termination. The Motion to Dismiss the Claims for Damages Under Act 75 is DENIED as to the claims for damages related to the following: the depreciation of equipment, furniture, etc., during the four-month relationship and during the necessary time thereafter to continue selling computers, the necessary expenses incurred during the dealership that could not be used by the present business and those necessary after termination to obtain a new computer line, the amounts invested for training which may not benefit the present business and the amount of expected earnings from any sales it can prove were going to be actually carried out had it not been for defendant's termination and GRANTED as to the claims for damages related to the five-times-the-amount-of-profits-obtained provided by section 278b(d), the goodwill provision of section 278b(c) and the expected profits on the two million dollar proposal to ITT.[14]

SO ORDERED.

## PARTIAL JUDGMENT

For the reasons stated in the Opinion and Order issued on this same date, the claims for damages related to the five-times-the-amount-of-profits-obtained provided by section 278b(d), the goodwill provision of section 278b(c) and the expected profits on the

---

14. Although this item of damages is not expressly claimed in the complaint, during the various motions filed by plaintiff it has incorporated the same as part of its damages.

two million dollar proposal to ITT are hereby DISMISSED.

SO ORDERED AND ADJUDGED.