**REPRESENTACIONES · EBI, INC., Empresas Bermudo, Inc., Gustavo Bermudo Azor, Juan Bermudo Azor, Plaintiffs,**

v.

**GATOR INDUSTRIES, INC., Defendant.**

**No. Civ. 83–2798CC.**

United States District Court, D. Puerto Rico.

March 6, 1986.

Héctor G. Oliveras, Hato Rey, P.R., for plaintiffs.

David Efrón, Hato Rey, P.R., Arnaldo Vélez, Miami, Fla., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action for breach of a Law 75 distributorship contract, Law 75 of June 24, 1964, *P.R.Laws Ann.*, title 10 sections 278, *et seq.*, that was removed to this court on account of the diversity of citizenship of the parties. On April 30, 1984 the complaint was amended to add Empresas Bermudo, Inc. (Empresas) and brothers Gustavo and Juan Bermudo-Azor as plaintiffs. The gist of the claim against Gator Industries, Inc. (Gator), a Florida manufacturer of medium and low priced sneakers, is that on May 25, 1983 Gator terminated, without just cause, the sales representation successfully conducted by the Bermudo brothers since 1978. Both parties have filed motions for summary judgment addressing the basic issue of whether plaintiffs were "dealers" within the meaning of Law 75. These motions were accompanied by assorted documents, affidavits and excerpts from depositions and from facts stipulated in the pretrial order.[1] Defendant views the rela-

tionship as an arrangement whereby plaintiffs would obtain shoe orders and forward them to defendant in exchange for a percentage of the price. Plaintiffs, however, consider themselves Law 75 dealers because they claim they created a market by promoting and closing sales of defendant's products. The central issue turns on whether plaintiffs had in fact the ability to "close" the sale they promoted.

Law 75's definitions of dealer and dealer's contract have been interpreted by the Supreme Court of Puerto Rico on various occasions. *See Córdova Simonpietri Insurance Agency v. Crown American Insurance Company*, 112 D.P.R. 197 (1982); *J. Soler Motors v. Kaiser Jeep Int'l.* 8 *P.R. Supreme Court Official Translations*, p. 138, 108 D.P.R. 134 (1978) and *San Juan Mercantile Corp. v. Canadian Transport Co., Ltd.*, 8 *P.R. Supreme Court Official Translations*, p. 218, 108 D.P.R. 134 (1978). These cases have portrayed the Law 75 dealer as one who creates a market for a particular product or service by the promotion and closing of sales contracts. *San Juan Mercantile*, 108 D.P.R. at 220–21. The federal courts have made considerable attempts to interpret Law 75's "sketchy" definitions *id.* as well as of the supreme court's interpretations of the law's coverage. *See Sudouest Import Sales Corp. v. Union Carbide Corp.*, 732 F.2d 14 (1st Cir.1984); *J.L. González v. Brown Group, Inc., etc.*, 628 F.Supp. 436 (D.P.R.1985); *Computec Systems Corp. v. General Automation, Inc.*, 599 F.Supp. 819, 823, n. 7 (D.P.R.1984); *Mario R. Franceschini, Inc. v. Riley Co.*, 591 F.Supp. 414 (D.P.R.1984); *Lugo v. Matthew Bender & Co., Inc.*, 579 F.Supp. 638 (D.P.R.1984); *Cruz-Ramos v. Brother International Corp.*, 445 F.Supp.

---

1. Gator also argued that there had been a "novation" in 1981 when Gator agreed to send the checks for the sales commissions to EBI instead of Empresas in view of an internal arrangement made by the Bermudo brothers on the functions of their corporations and that the claim was time barred. This argument, which does not make much sense for we are never told how the relationship was changed by the alleged novation or how the three-year period provided by Law 75 could bar an action filed less than four

months after the termination letter, was clarified in Gator's subsequent Memorandum of December 17, 1984 which reveals that the objection to the multiple plaintiffs was to the possibility of multiple recovery for the same wrong. We need not examine this given our ruling in the case. For purposes of this Opinion and Order we consider that Gator entered into a single, continuous relationship with the Bermudo brothers doing business as Empresas and later as EBI.

983 (D.P.R.), *aff'd.* 558 F.2d 817 (1st Cir. 1978).

In *Franceschini*, we attempted to develop a framework on which to base the analysis of this recurrent issue by relying on the Supreme Court of Puerto Rico's discussions in the *San Juan Mercantile, Kaiser Jeep* and *Córdova* decisions. A common element present in the analysis made in these opinions is that the Law 75 dealer has been characterized not only as one who develops a market but also as one with sufficient entrepreneurial independence from the principal or manufacturer to be capable of promoting and closing sale or service contracts. *Franceschini,* 591 F.Supp. at 418. There the Court examined all the activities encompassed in the relationship to determine whether these "add up to the development of a market through promotion and closing of sales contracts." *Id.* Here, as in *Franceschini* and *Sudouest,* the activities of plaintiffs' commercial relationship with Gator did not add up to a Law 75 distributorship.

Plaintiffs admitted that they did not invest anything in advertisement or promotional literature and had no inventories of items in stock or warehouse facilities. They did not assume the risks of credit or payment for the buyers were directly invoiced by Gator. If credit was awarded, it was handled by a third party who assumed the risk and the account. Plaintiffs have tried to excuse the absence of the usual trappings of a dealership urging that the product, brandless, low budget sneakers,

was not marketed through advertisement but by person to person contact with clients. They argue that neither they nor defendant incurred in advertising expenses or assumed credit risks. They claim that the substantial increase in sales once they were appointed representatives reveals that they successfully promoted defendant's product and created a market in Puerto Rico for them.

What plaintiffs fail to explain is the "Conditions of Sale" printed on the back of the "acknowledgment" form sent by Gator to them and to the buyers upon receipt of any order sent by plaintiffs.[2] Plaintiffs would have us believe that this "acknowledgment" was a mere confirmation safeguard by Gator to avoid manufacturing items that had not been requested. However, the undisputed record proves otherwise. The "Conditions of Sale" printed behind the acknowledgment form clearly stated that this form was the sales contract and that the sale was being made between Gator and the "buyer." The buyers were not the plaintiffs but the people plaintiffs had contacted and who placed the order.[3] The "Conditions of Sale" also contained the usual provisions related to purchase transactions such as refunds, dissatisfaction with merchandise, etc., referring to Gator as seller at all times. Finally, the document provides that the merchandise would be delivered F.O.B. by Gator to the buyer, according to the shipping arrangements made by the latter. A space was provided in the acknowledgment form to indicate

**2.** Among the conditions pointed on the back of the acknowledgment form:

1. These conditions of sale together with order and acceptance by the seller constitute the only contract between buyer and seller covering this transaction and supersede buyer's own order form. There are no other oral representations or agreements relative to this contract that are not contained herein, and these conditions shall not be modified or amended except in writing.

2. All orders are subject to approval from office. We reserve the right, at all times, to cancel any order or orders for any reasons whatsoever, and buyer agrees not to hold us liable because of such action.

3. ....

14. These conditions together with the order and acceptance constitute the whole of the agreement between us, and any discussions or understandings prior hereto are superseded and merged herein. The terms and conditions hereof cannot be altered or waived, except in writing and no representations or statements inconsistent with the terms hereof, shall be binding upon us. All changes in orders must be completed in writing and acknowledged by us, otherwise, we shall not be responsible for noncompliance with such changes.

**3.** The "buyer" identified on the front part of the form was not plaintiff but was the person who had placed the order with plaintiffs.

how shipping and billing were to be made. In other words, the merchandise was never owned by plaintiffs nor were they authorized to sell it without Gator's acknowledgment or consent. The record reveals other dealer-type activities which plaintiffs did not engage in, to wit: the pricing of items which was generally prefixed by Gator, no merchandise kept in stock, no involvement with the billing and payment phase of the transaction which was made by Gator and no discernible actual "handling" or having custody over the merchandise. This confirms that plaintiffs were not able to conclude the sales produced by their promotional efforts and that they were not "effectively in charge" of the distribution of Gator's merchandise.

We grant that the original agreement and most arrangements during the relationship were verbal and, thus, difficult to ascertain. However, plaintiffs have not disputed the conditions of sale or the other characteristics of their relationship with Gator. On this record, plaintiffs' conclusory allegations that the acknowledgment form was something other than what its text clearly stated it to be, an acceptance by the seller to the buyer of the terms and conditions of the sale, *see P.R.Laws Ann.*, title 31 sections 3746 and 3401, are insufficient to defeat defendant's motion for summary judgment. *See Lusson v. Carter*, 704 F.2d 646, 469–50 (1st Cir.1983); *and First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 289, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). It may well be that plaintiffs' activities, for which they were paid more than $60,000 in commissions, resulted in increased sales of defendant's products in Puerto Rico. Yet, this is insufficient to trigger the applicability of the Act's special, added protections. Plaintiffs did not demonstrate that they possessed that "independent entrepreneur, devoid of hierarchical subordination" quality in their relationship with defendant, *Kaiser Jeep*, Translation at 145, that enabled them to be "effectively in charge" of the distributorship by closing the sales they promoted. What the record has established is that plaintiffs were only forwarders of orders they solicited on behalf of defendant and for which they received a commission upon actual sale. We consider that the Supreme Court of Puerto Rico's conceptualization of a Law 75 dealer prevents us from including such type of relationship as one protected by this special law. We are in no position to conclude otherwise, absent a clarification by that court or amendment by the legislature. The motion for summary judgment filed by defendant is GRANTED. Judgment shall be entered dismissing the complaint.

SO ORDERED.