January 6, 1993
 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1076

 DRAFT-LINE CORP.,

 Plaintiff, Appellant,

 v.

 THE HON COMPANY,

 Defendant, Appellee.

 

No. 92-1173

 DRAFT-LINE CORP.,

 Plaintiff, Appellee,

 v.

 THE HON COMPANY,

 Defendant, Appellant.

 

No. 92-1653

 DRAFT-LINE CORP.,

 Plaintiff, Appellant,

 v.

 THE HON COMPANY,

 Defendant, Appellee.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jose Antonio Fuste, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Cyr, Circuit Judge.
 

 

 Thomas Lincoln with whom Jose A. Feliciano was on brief for
 
Draft-Line Corp.
 John F. Malley, III for The Hon Company.
 

 

 

 COFFIN, Senior Circuit Judge. These are cross-appeals
 

arising out of a diversity suit based on the Puerto Rico Dealers'

Act, Act No. 75 of June 24, 1964, as amended, 10 L.P.R.A. 278-

278d. Plaintiff, Draft-Line Corp., is a retail dealer in office

furniture; defendant, The Hon Company, is a stateside

manufacturer and supplier. After a ten year relationship, during

which time Draft-Line was Hon's sole distributor in Puerto Rico,

Hon entered into sales distribution relationships with four other

Puerto Rico dealers. Draft-Line filed a lawsuit charging that

Hon illegally terminated an exclusive dealership, i.e., without

"just cause." The company claimed $248,604 for statutory damages

measured by five years of past profits, $500,000 for loss of

investment and good will, $500,000 for loss of future profits,

and $500,000 for "[l]oss of the business which was devoted solely

to the distributorship of defendant's products." 

 The relevant history of the parties' relationship can be

briefly stated. In 1977 Hon began a six month trial period,

treating Draft-Line as an exclusive dealer. When the period had

expired, there was no further discussion of exclusivity, but in

fact Draft-Line was Hon's only Puerto Rico dealer for ten years.

Credit terms were the ultimate cause of the rift between supplier

and dealer. They started out at net 30 days, then liberalized to

net 60 days, until 1981. By this time Draft-Line was finding it

difficult to make payments, since the shipments from Hon often

did not arrive until after payments were due. In 1981 Hon

decided to require cash in advance of shipment. Draft-Line was

 -3-

unable to expand its sales of Hon products because of its

inability to obtain financing that would allow the handling of

larger volume. In 1987 Hon announced that it was taking on four

other dealers, none of whom were given any better terms than were

given to Draft-Line.

 Over the decade from 1977 to 1987, Draft-Line's orders from

Hon (and Hon's total sales in Puerto Rico) averaged some $60,000

a year. Between the end of 1987 and 1989, after the

establishment of the four new dealerships, Hon's sales in Puerto

Rico multiplied ten-fold to $669,490 in 1989. Draft-Line, on the

other hand, after a two year hiatus in which it practically

ceased selling Hon products, resumed selling at its former rate

of $60,000 in 1990. It remains a Hon dealer.

 On this record, defendant moved for summary judgment on the

grounds that, as a matter of law, it had established "just cause"

for terminating Draft-Line's exclusive relationship and that

Draft-Line had failed to identify any genuine issue of material

fact as to damages. The court's grant of summary judgment rested

solely on the complete absence of any factual showing of damages.

The court observed, moreover, that it was unlikely that Draft-

Line had been damaged. Its own sales had held up well, showing

that its customers had not been taken by the new dealers, and it

was even likely that Draft-Line would be helped by the new and

expanded exposure of Hon's products. 

 The court addressed what it perceived to be plaintiff's

basic position -- that Law 75 authorizes automatic damages in

 -4-

case of any violation. The provision invoked, 10 L.P.R.A. 

278b(d), states that in the event of a violation, a dealer may be

indemnified "to the extent of the damages caused him . . . on the

basis of the following factors:" investment in plant and

inventory, good will (listing such determinants as age of

dealership, volume of sales, proportion of dealer's business and

of Puerto Rican market), and profits realized over the past five

years. 

 The court reasoned that if any part of this statute were to

be read as justifying the automatic grant of damages, the result

would be tantamount to awarding punitive damages, contrary to

Puerto Rico policy. It cited the Puerto Rico Supreme Court's

pronouncement in Marina Industrial, Inc. v. Brown Boveri Corp.,
 

114 D.P.R. 64, 90 (1983), that the factors above noted are "only

guidelines for the fixing of the damages and do not bind the

court to automatically award indemnity applying each and every

factor." Judge Cerezo quoted from the same source in Computec
 

Systems Corp. v. General Automation, Inc., 599 F. Supp. 819, 825
 

(D.P.R. 1984): "[The factors] are not to be imposed

automatically without their being proven and connected to the

breach of contract or detrimental act."

 We conclude that the district court did not err in granting

summary judgment to defendant Hon on the ground that there was no

showing by Draft-Line that there was a genuine issue of fact

relating to damages meeting the standards of Anderson v. Liberty
 

 -5-

Lobby, Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett,
 

477 U.S. 317 (1986).

 Hon, inexplicably, has sought to mount a cross-appeal

challenging a "finding" that it had terminated its exclusive

relationship with Draft-Line without "just cause." It was unable

to give us any authority for the proposition that a party

receiving a favorable judgment from the trial court has anything

to appeal. It is true that the court began its opinion by

referring to the termination of the exclusive nature of the

parties' relationship as improper. But at several other places

in the opinion the court made it crystal clear that it could not

reach the "just cause" issue on the record made and therefore

could not give defendant summary judgment on this issue. And its

phrasing of its final action was solely confined to damages.

This cross-appeal should never have left counsel's desk.

 Affirmed. No costs.
 

 -6-