983 F.2d 1046
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
DRAFT-LINE CORP., Plaintiff, Appellant,
v.
THE HON COMPANY, Defendant, Appellee.
DRAFT-LINE CORP., Plaintiff, Appellee,
v.
THE HON COMPANY, Defendant, Appellant.
DRAFT-LINE CORP., Plaintiff, Appellant,
v.
THE HON COMPANY, Defendant, Appellee.
 Nos. 92-1076, 92-1173, 92-1653.
 United States Court of Appeals,
First Circuit.
 January 6, 1993
 
 APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Thomas Lincoln with whom Jose A. Feliciano was on brief for Draft-Line Corp.
 John F. Malley, III for The Hon Company.
 D.Puerto Rico
 AFFIRMED.
 Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Cyr, Circuit Judge.
 COFFIN, Senior Circuit Judge.
 
 
 1
 These are cross-appeals arising out of a diversity suit based on the Puerto Rico Dealers' Act, Act No. 75 of June 24, 1964, as amended, 10 L.P.R.A. §§ 278-278d. Plaintiff, Draft-Line Corp., is a retail dealer in office furniture; defendant, The Hon Company, is a stateside manufacturer and supplier. After a ten year relationship, during which time Draft-Line was Hon's sole distributor in Puerto Rico, Hon entered into sales distribution relationships with four other Puerto Rico dealers. Draft-Line filed a lawsuit charging that Hon illegally terminated an exclusive dealership, i.e., without "just cause." The company claimed $248,604 for statutory damages measured by five years of past profits, $500,000 for loss of investment and good will, $500,000 for loss of future profits, and $500,000 for "oss of the business which was devoted solely to the distributorship of defendant's products."
 
 
 2
 The relevant history of the parties' relationship can be briefly stated. In 1977 Hon began a six month trial period, treating Draft-Line as an exclusive dealer. When the period had expired, there was no further discussion of exclusivity, but in fact Draft-Line was Hon's only Puerto Rico dealer for ten years. Credit terms were the ultimate cause of the rift between supplier and dealer. They started out at net 30 days, then liberalized to net 60 days, until 1981. By this time Draft-Line was finding it difficult to make payments, since the shipments from Hon often did not arrive until after payments were due. In 1981 Hon decided to require cash in advance of shipment. Draft-Line was unable to expand its sales of Hon products because of its inability to obtain financing that would allow the handling of larger volume. In 1987 Hon announced that it was taking on four other dealers, none of whom were given any better terms than were given to Draft-Line.
 
 
 3
 Over the decade from 1977 to 1987, Draft-Line's orders from Hon (and Hon's total sales in Puerto Rico) averaged some $60,000 a year. Between the end of 1987 and 1989, after the establishment of the four new dealerships, Hon's sales in Puerto Rico multiplied ten-fold to $669,490 in 1989. Draft-Line, on the other hand, after a two year hiatus in which it practically ceased selling Hon products, resumed selling at its former rate of $60,000 in 1990. It remains a Hon dealer.
 
 
 4
 On this record, defendant moved for summary judgment on the grounds that, as a matter of law, it had established "just cause" for terminating Draft-Line's exclusive relationship and that Draft-Line had failed to identify any genuine issue of material fact as to damages. The court's grant of summary judgment rested solely on the complete absence of any factual showing of damages. The court observed, moreover, that it was unlikely that Draft-Line had been damaged. Its own sales had held up well, showing that its customers had not been taken by the new dealers, and it was even likely that Draft-Line would be helped by the new and expanded exposure of Hon's products.
 
 
 5
 The court addressed what it perceived to be plaintiff's basic position-that Law 75 authorizes automatic damages in case of any violation. The provision invoked, 10 L.P.R.A. § 278b(d), states that in the event of a violation, a dealer may be indemnified "to the extent of the damages caused him ... on the basis of the following factors:" investment in plant and inventory, good will (listing such determinants as age of dealership, volume of sales, proportion of dealer's business and of Puerto Rican market), and profits realized over the past five years.
 
 
 6
 The court reasoned that if any part of this statute were to be read as justifying the automatic grant of damages, the result would be tantamount to awarding punitive damages, contrary to Puerto Rico policy. It cited the Puerto Rico Supreme Court's pronouncement in Marina Industrial, Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 90 (1983), that the factors above noted are "only guidelines for the fixing of the damages and do not bind the court to automatically award indemnity applying each and every factor." Judge Cerezo quoted from the same source in Computec Systems Corp. v. General Automation, Inc., 599 F. Supp. 819, 825 (D.P.R. 1984): "[The factors] are not to be imposed automatically without their being proven and connected to the breach of contract or detrimental act."
 
 
 7
 We conclude that the district court did not err in granting summary judgment to defendant Hon on the ground that there was no showing by Draft-Line that there was a genuine issue of fact relating to damages meeting the standards of Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 
 8
 Hon, inexplicably, has sought to mount a cross-appeal challenging a "finding" that it had terminated its exclusive relationship with Draft-Line without "just cause." It was unable to give us any authority for the proposition that a party receiving a favorable judgment from the trial court has anything to appeal. It is true that the court began its opinion by referring to the termination of the exclusive nature of the parties' relationship as improper. But at several other places in the opinion the court made it crystal clear that it could not reach the "just cause" issue on the record made and therefore could not give defendant summary judgment on this issue. And its phrasing of its final action was solely confined to damages. This cross-appeal should never have left counsel's desk.
 
 
 9
 Affirmed. No costs.