# 2006 DTA 72

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

ASOCIACIÓN DE RESIDENTES FUENTES DEL CONDADO Y DEL VALLE, INC.
Apelante

v.

JM VENTURA ENTERPRISES, S.E. ESTANCIAS DE LA FUENTE S.E.
Apeladas

Núm. KLAN-05-01440

San Juan, Puerto Rico, a 20 de abril de 2006

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Miranda De Hostos y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Asociación de Residentes de Fuentes del Condado y Del Valle, Inc. (en lo sucesivo, Asociación o Apelante), presentó escrito de Apelación, el 23 de noviembre de 2005. Nos solicitó la revocación de la Sentencia que dictó el Tribunal de Primera Instancia, Sala de Bayamón en San Juan, (en lo sucesivo, TPI), el 8 de junio, la cual se notificó el 23 de agosto de 2005.

Con el beneficio de la comparecencia de ambas partes, así como de la Transcripción de la Prueba Oral (en lo sucesivo, Transcripción), contenida en el Apéndice de la Apelación (páginas 540-721), y la abundante prueba documental, estamos prestos a resolver.

Modificamos la cuantía de la apelada Sentencia, y así modificada, la confirmamos. Más adelante consignamos nuestros fundamentos.

## I

A principios de 1995, con posterioridad a unas lluvias, hubo un desprendimiento de tierra que afectó el área recreativa de la Urbanización Fuentes del Condado y del Valle (en lo sucesivo, Urbanización), localizada en Toa Alta. Luego de intercambiar comunicaciones, la Apelante, representante de la Urbanización, y lós desarrolladores de la misma, JM Ventura Enterprises, S.E. y Estancias de la Fuente, S.E. (en lo sucesivo, JM y Estancias o Apelada), el 26 de mayo de 1996, ambas partes otorgaron un documento intitulado *"ACUERDOS"*. En el mismo, la Apelada se comprometió a lo siguiente: *"**Finalizar la reparación del área recreativa que fueron afectadas en las lluvias del pasado mes de abril de 1995 en un plazo de 90 días a partir de 28 de marzo de 1996.** Adem[á]s de la reparación y restauración de las canchas de baloncesto y tenis."* (Énfasis e itálicas en el original) Véase Apéndice de la Apelación, página 48.

Entretanto, las partes se cursaron varias misivas en las cuales se discutía cómo y cuándo se llevarían a cabo las reparaciones necesarias. Surge de tales comunicaciones que la Apelada reiteraba su disposición para dar inicio a los trabajos de reparación; mientras tanto, la Asociación negaba el acceso de la Apelada a la Urbanización. Véase Apéndice de la Apelación, páginas 465 y 469.

Así las cosas, el 31 de diciembre de 1998, la Apelante presentó una demanda sobre daños y perjuicios por vicios de construcción contra JM y Estancias. Solicitó una indemnización de veinte millones de dólares ($20,000,000.00) por los daños causados a la Urbanización. Tanto las instalaciones de entretenimiento, como los terrenos circundantes quedaron truncados, debido a que el talud que bordeaba tales áreas comunales se derrumbó y agrietó en gran magnitud.

Transcurridos varios incidentes de índole procesal, el 5 de mayo de 2005, el TPI celebró juicio; recibió extensa prueba testifical y documental, así como varios Informes Periciales (en lo sucesivo, Informes). Debido a que la Apelada ya había aceptado la negligencia, la controversia se redujo a establecer el modo de reparación de las áreas afectadas, así como la valoración de los daños.

Durante el juicio, por parte de la Apelante, testificaron: Carlos Rodríguez Molina, ingeniero civil y geotécnico con maestría en ingeniería geológica, (en lo sucesivo, Ing. Rodríguez); y José O. González García, ingeniero civil y contratista, (en lo sucesivo, Ing. González). El Ing. Rodríguez preparó sendo Informe, el 19 de marzo de 2002. Refiérase al Apéndice de la Apelación, páginas 78-201. También sometió una *"carta técnica"*, de 3 de mayo de 2004, en la cual consignó los resultados del análisis preliminar de las áreas afectadas, así como su recomendación de reparación. Véase Apéndice de la Apelación, páginas 201-214.

Por parte de la Apelada, testificaron: Carlos Antonio Ortiz Suárez, quien posee una maestría en ingeniería civil, (en lo sucesivo, Ing. Ortiz); y Gregorio Hernández, que tiene un doctorado en ingeniería civil, (en lo sucesivo, Dr. Hernández). El Ing. Ortiz también preparó sendos Informes; el 11 de mayo de 2001, y el 30 de julio de 2004. Véase Apéndice de la Apelación, páginas 219-455. Por su parte, el Dr. Hernández preparó su Informe, el 5 de mayo de 2001. Véase Apéndice de la Apelación, páginas 456-460. Igualmente, el 26 de agosto de 2003, el Dr. Hernández redactó una misiva en la que consignó su recomendación, a la luz de cuatro cotizaciones para la reparación del talud y demás áreas afectadas de la Urbanización. Véase Apéndice de la Apelación, páginas 461-463.

Tres compañías fueron las que ofrecieron sus estimados: J.O.G. Engineering, Corp. (en lo sucesivo, JOG); Dorado Equipment & Construction Corp. (en lo sucesivo, DEC); y Soletanche Inc. (en lo sucesivo, Soletanche). JOG ofreció dos estimados: $508,080.00, el 19 de junio de 2002; y $1,672,440.00, el 21 de agosto de 2002. El

estimado de DEC, de 15 de noviembre de 2002, fue: $1,655,260.00. Mientras que Soletanche cotizó, $542,000.00, el 18 de noviembre de 2002.

De los testimonios periciales, como de los Informes, debemos destacar los siguientes aspectos.

La tesis de maestría del Ing. Rodríguez fue sobre la estabilización de derrumbes. Durante su carrera profesional, ha preparado sobre mil Informes. Su recomendación para restaurar el talud y áreas circundantes, es en esencia, la instalación de unos muros de gaviones ■ en la parte inferior del talud, pero que no se acerquen a la Quebrada Méjico, ■ mientras que en la parte superior, sin tumbar la vegetación, se instalen unos pilotes de veinte pulgadas con concreto reforzado, hasta unos cincuenta pies. Véase Apéndice de la Apelación, páginas 606-612.

Sobre las cotizaciones sometidas, el Ing. Rodríguez enfatizó que aunque recomendó las tres compañías que ofrecieron sus estimados, y que corresponde a JM y Estancias seleccionar la compañía, es JOG la que, "*está liderada por un ingeniero civil especializado en tratamiento y remediación de suelo y específicamente de deslizamiento, entre muchas otras cosas y problemas de suelo*". Véase Apéndice de la Apelación, páginas 629-630. La propuesta de JOG es de $1,672,440.00. *Íd.*, página 462.

El Ing. González, de JOG, "*se dedica a la construcción de especialidades geotécnicas y estructurales*". Véase Apéndice de la Apelación, página 632. Originalmente fue contratado por JM. De dos estimados que emitió para la reparación del talud en controversia, el segundo cubría un área de ochocientos cincuenta pies lineales. *Íd.*, página 638. En apretada síntesis, este segundo estimado, de 2002, consistía en la implementación de la solución recomendada por el Ing. Rodríguez, de instalar pilotillos y muros de gaviones, además de la restauración total de las instalaciones, inclusive las áreas recreativas y pasiva, pista y canchas, lo cual devolvería éstas, en la medida posible, a su estado original. La cotización que ofreció durante su testimonio fue de $1,648,000.00. *Íd.*, páginas 638-645.

A pesar de todo lo anterior, tanto el Ing. Ortiz como el Dr. Hernández, limitaron sus recomendaciones a la instalación de un muro de gaviones en el talud. Esencialmente optaron por tan simple solución, porque era lo correcto y "*lo más barato*". *Íd.*, páginas 657-658 y 662. O, en palabras del Dr. Hernández: "*la ingeniería no se puede divorciar de los costos, la opción de la ingeniería es buscar una solución a un problema, una solución que sea adecuada, satisfactoria, que no comprometa la seguridad, **pero a un menor, al menor costo posible.**" (Énfasis suplido) Íd., página 691.

Tampoco podemos pasar por alto que **el Informe del Ing. Ortiz no utilizó ni se fundamentó en estudios de suelo o geológicos, ni análisis científicos, cuantitativos, de ingeniería, o de estabilidad de terrenos, ni menos hicieron clasificaciones del suelo.** *Íd.*, páginas 664-666.

En lo que respecta al costo estimado de las reparaciones necesarias en la Urbanización, a preguntas de la Honorable Jueza que presidió el juicio, el Dr. Hernández respondió: "***No recuerdo el número exacto, pero creo que es alrededor de doscientos setenta mil dólares** para el área afectada por el fallo o por los fallos*". (Énfasis nuestro) *Íd.*, página 694.

Luego de escuchar y recibir toda la prueba, el 8 de junio de 2005, el TPI dictó Sentencia, mediante la cual condenó a la Apelada a pagar la suma de doscientos setenta mil dólares ($270,000.00), a favor de la Apelante. Empero, le atribuyó a ésta, un veinticinco por ciento (25%) de negligencia comparada, lo que a su vez redujo la cuantía a pagar, a doscientos dos mil quinientos dólares ($202,500.00).

Luego de acoger una moción de reconsideración de la Apelante, el TPI la denegó, mediante Resolución de 20 de octubre, notificada el 28 de octubre.

Oportunamente, la Apelante presentó el recurso que nos ocupa, en el cual le imputó los siguientes cinco errores al Tribunal de Instancia.

*"PRIMER ERROR:*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL INVOCAR EL INCISO (5) DE LA REGLA 16 DE EVIDENCIA, 32 L.P.R.A. AP. IV, R. 16, PARA PRESUMIR COMO TESTIMONIO ADVERSO LOS TESTIGOS QUE FUERON DEBIDAMENTE EXCUSADOS POR EL TRIBUNAL.*

*SEGUNDO ERROR:*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL OMITIR POR COMPLETO EN SU VALORIZACIÓN EN EL FALLO CONDENATORIO LOS COSOS RELACIONADOS A LA RESTAURACIÓN DE LAS AREAS RECREATIVAS.*

*TERCER ERROR:*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA EN SU APRECIACIÓN DE LA PRUEBA PERICIAL.*

*CUARTO ERROR:*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE HUBO NEGLIGENCIA COMPARADA, PUES NO HAY BASE EN EL RECORD PARA SOSTENER DICHO DICTAMEN[.]*

*QUINTO ERROR:*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE MOCION URGENTE, PUES FALTO AL DEBIDO PROCESO DE LEY AL NEGAR ESCUCHAR PLANTEAMIENTOS SOBRE DERRUMBES POSTERIORES A LA SENTENCIA[.]"*

El 14 de febrero de 2006, la Apelada presentó su Alegato en oposición. La Transcripción consta en el último anejo del Apéndice de la Apelación (páginas 540-721). Así, dimos por sometida la causa.

## II

**La controversia medular del recurso es la valoración de los daños reclamados por la Apelante**, por concepto de vicios de construcción, **así como la procedencia y aplicación de las doctrinas de mitigación de daños y negligencia comparada**. Para resolverla, discutiremos en conjunto los errores del segundo al cuarto.

Antes de adentrarnos en el análisis de la controversia, consideramos apropiada una breve discusión de los restantes errores; éstos son, el primero y el quinto.

Como bien señala en su alegato la Apelada, *"la determinación del TPI [de aplicar la presunción de adversidad de la Regla 16 de las de Evidencia, 32 L.P.R.A. Ap. IV], no ocasionó perjuicio alguno a la [Apelante]"*. Véase Alegato de Apelada, página 7. Ello es así, porque la prueba pericial y testifical de la Apelante fue recibida por el TPI, y debidamente sopesada a los fines de resolver la valoración de los daños y la mitigación de los mismos, que precisamente son los asuntos que ante nuestra consideración radican. Por lo tanto, resulta improcedente adentrarnos en la discusión de si fue o no correcta la determinación del TPI, de aplicar la aludida presunción. No es relevante a la adjudicación que del recurso de apelación hacemos, ni a nuestro análisis para arribar a la solución del mismo. En la alternativa, de haberse cometido el error, tal proceder no generó efecto adverso alguno hacia la Apelante.

Entretanto, igual resulta improcedente el quinto error, por cuanto, como bien declaró el foro sentenciador, ya los daños reclamados habían sido adjudicados. Más aún, al amparo la discusión que más adelante hacemos de la doctrina de mitigación de daños, se verá que a la luz de la misma, tampoco proceden los daños con posterioridad al reclamo de la Asociación, menos si tal reclamo, como aquí sucedió, ya fue resuelto. Además, entendemos que el Tribunal consideró los intereses de todas las partes y dispuso según lo exige la justicia sustancial, de conformidad con la Regla 56 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Ahora bien, en nuestro ordenamiento civil, las acciones que exigen la reparación de daños, deben cumplir con tres requisitos básicos. Tienen que concurrir los siguientes elementos: daño real; nexo causal entre el daño y la acción u omisión; y si el acto o la omisión es culposo o negligente. *Rivera Colón v. Díaz Arocho*, res. el 26 de agosto de 2005, **2005 JTS 121**.

Respecto a la valoración de los daños, en innumerables ocasiones, el Tribunal Supremo ha manifestado que, *"[l]a estimación y valorización de daños es una gestión o tarea difícil y angustiosa, ello debido al cierto grado de especulación en la determinación de éstos y por incluir a su vez elementos subjetivos tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos"*. Véase *Rodríguez Báez v. Nationwide Insur. Co.*, res. el 18 de abril de 2002, **2002 JTS 61**. Igualmente ha reiterado el supremo foro judicial que por ser el foro de Instancia el que tiene contacto directo con la prueba, en especial cuando se trata de la prueba testifical, los tribunales apelativos observarán la norma de abstención judicial, salvo que, *"las cuantías concedidas [por daños] sean ridículamente bajas o exageradamente altas"*. *Blas Toledo v. Hospital Guadalupe*, 146 D.P.R. 267 (1998). *"Empero, señaladas y sometidas a nuestra consideración circunstancias comprobadas que ameritan una modificación de cuantía, procederemos a ello siguiendo los criterios antes mencionados."* *Urrutia v. A.A.A.*, 103 D.P.R. 643, 648 (1975). Nuevamente, en defecto de lo anterior, prevalece la norma de abstención judicial a los efectos de no intervenir con la apreciación de la prueba ejecutada por el TPI, salvo concurran en tal ejercicio: error manifiesto, pasión, prejuicio o parcialidad. *Colón González v. K-Mart*, 154 D.P.R. 510 (2001).

Aplicado lo anterior al entorno fáctico de la presente causa, aquí la cuantía imputada por daños es ridículamente baja, si tomamos en consideración la magnitud de los daños causados a la Apelante, así como las correspondientes y necesarias reparaciones. Por todo lo cual, modificamos la cuantía de la apelada Sentencia.

En torno a la doctrina de mitigación de daños, el Tribunal Supremo ha sido firme en que el agraviado tiene el deber de adoptar *"medidas razonables pertinentes y a su alcance"*, dirigidas a reducir el monto de los daños. *Fresh-O-Baking Co. v. Molinos de P.R.*, 103 D.P.R. 509, 520 (1975).

Asimismo, procede imponerle responsabilidad al que no procura minimizar los daños sufridos. *Aponte v. Cortés*, 101 D.P.R. 31 (1973). El distinguido jurista y ex juez asociado del Tribunal Supremo, Carlos J. Irizarry Yunqué, nos ilustra al respecto, mediante las siguientes expresiones:

*"si una persona se cruza de brazos y nada hace para proteger contra daños a su propiedad, sea por deterioro (Fresh-O-Baking v. Molinos) o por actos vandálicos (Soc. Gananciales Valdejulli v. Jerónimo Corporation), es decir, que no ejerce sobre ella el cuidado que es de esperarse de un buen padre de familia, no tendrá derecho a recobrar por todos los daños sufridos por dicha propiedad. La indemnización a que tuviere derecho se reducirá tomando en consideración el deterioro o daño que se debió a la desidia y falta de diligencia por parte de su dueño."* Véase C.J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1995, pág. 379.

En resumidas cuentas, lo que se le exige al reclamante, es que emplee todos los esfuerzos razonables, a su alcance, encaminados a remediar la situación por la cual reclama daños. Véase *Afanador Irizarry v. Roger Electric Co.*, res. el 26 de abril de 2002, **2002 JTS 62**, y *Odriozola v. Superior Cosmetics Dist. Corp.*, 116 D.P.R. 485 (1985).

De otra parte, respecto a la apreciación de la prueba pericial y documental, está firmemente establecido que este Tribunal de Apelaciones, está en idéntica posición a la del foro de Instancia, y por tanto, podrá emplear su criterio discrecional al evaluarla. *Municipio de Loíza v. Sucns. de Suárez y de Fuentes*, 154 D.P.R. 333 (2001); *Dye-Tex P.R., Inc. v. Royal Insur. Co.*, 150 D.P.R. 658 (2000). Sin embargo, nuevamente, el Tribunal de Apelaciones no intervendrá con la apreciación de la prueba del foro sentenciador, salvo que en dicho ejercicio haya incurrido Instancia en error manifiesto, prejuicio, parcialidad o pasión. *Trinidad García v. Chade*, 153 D.P.R. 280 (2001).

En la presente causa, ante la profusa prueba documental, así como el abundante testimonio pericial, este Tribunal de Apelaciones estudió y analizó toda la prueba *de novo*.

Para justipreciar los daños, la prueba pericial resulta sumamente útil. En la presente apelación, es imprescindible, pues los daños en controversia versan sobre áreas que requieren conocimiento especializado en ingeniería civil, estructural, y geológica, entre otras. El TPI tuvo amplia oportunidad de escuchar a los peritos testificar sobre sus teorías, así como de considerar la extensa prueba documental que obra en el expediente judicial. Este Tribunal de Apelaciones, según pudimos apreciar, está en igual posición a la del TPI para evaluar tanto la prueba documental como los testimonios de los peritos, en este caso, por conducto de la Transcripción.

Al ejercer tal prerrogativa, nos percatamos de que la prueba pericial de la Apelada, no es la más precisa, completa ni acertada. Menos nos impresiona de convincente. Del mismo modo, dista mucho el tímido estimado de $270,000.00 que ofreció el Dr. Hernández, como cuantía aproximada para costear la reparación de los daños, de la cuantía estimada por el Ing. González, la cual ascendió a $1,648,000.00.

Si nos remitimos nuevamente a la discusión de las opiniones periciales, en la parte I de esta Sentencia, veremos que la prueba que mejor fundamentada está es la de la Apelante. El raciocinio y el análisis observados por los peritos de ésta, son coherentes y gozan de mayor precisión y justicia. Añádase que según surge claramente de los Informes, la reparación de las estructuras afectadas no era una sencilla, sino complicada y costosa. También surge de la prueba y los testimonios, que los métodos de estudio utilizados por cada uno de los peritos eran de distintos años, distantes entre sí. Por ejemplo, el del perito de la Apelada, Bishop o BC Tower, es del 1955. Mientras tanto, el del perito de la Apelante, Blacker, es de mediados del 1970. Véase Apéndice de la Apelación, páginas 590, 592-593, 595, y 597. Así pues, sobre el método de reparación, no existe duda de que ambos peritos discrepan, lo que también se traduce a una disensión sobre qué compañía utilizar para llevar a cabo las reparaciones. No obstante, y como ya sabemos, el Ing. Rodríguez entiende que la JOG es distinguible de las demás compañías que cotizaron porque "*está liderada por un ingeniero civil especializado en tratamiento y remediación de suelo y específicamente de deslizamiento*". *Íd.*, páginas 629-630.

Por tanto, no hallamos razón alguna por la cual el TPI debiera acoger el estimado de $270,000.00, que brindó el perito de la Apelada. A todas luces, esa cantidad no encuentra apoyo en las pruebas pericial y documental que constan en el expediente, las cuales el TPI recibió de primera mano. Además, según surge de la Transcripción, dicha cuantía emergió de una tenue respuesta que el Dr. Hernández dio a una pregunta del Tribunal. Este perito afirmó que aunque apenas lo recordaba, creía que la suma del estimado era $270,000.00. Es necesario aclarar que **tal cuantía tampoco incluye los costos de reparación de las áreas recreativas afectadas, entiéndase inclusive: gazebos, canchas de tenis y baloncesto, pista para correr, y verjas, entre otras.**

Como nota final, y como bien trae a nuestra atención la Apelada, la Asociación "*pudo tomar medidas sencillas y económicas para estabilizar el área afectada y evitar que se continuara deteriorando*". Véase, Alegato de la Apelada, página 14. Por ello, colegimos que sí faltó la Apelante a su deber de mitigar los daños generados a la Urbanización. Por todo lo cual, procede reducir la partida de daños aquí modificada, por un veinticinco por ciento (25%), como bien estimó el foro sentenciador.

Por todo lo anterior, debió el TPI valorar los daños totales en la cifra que le ofreció durante el juicio, el Ing. González, entiéndase, $1,648,000.00. Al así no proceder, erró.

## III

Por todo lo antes expuesto, modificamos la Sentencia, incrementando la compensación por daños a $1,648,000.00, y así modificada, la confirmamos. Procede, de igual modo, restarle el veinticinco por ciento (25%) atribuible a la Apelante, por no haber desplegado una conducta de mitigación de daños.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. Laura M. Vélez Vélez
Secretaria Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 72**

**1.** Los muros de gaviones son unas cajas de malla, rellenadas con piedras de aproximadamente ocho pulgadas de diámetro, que se colocan unas sobre otras en *"forma geométrica pre-diseñada"*. Véase Apéndice de la Apelación, página 642.

**2.** Parte de la Urbanización yace sobre una porción del cauce de la Quebrada Méjico, en el lecho de ésta, cuyos suelos son de resistencia dudosa para la construcción de terraplén. Véase Apéndice de la Apelación, páginas 584 y 600.