# 2008 DTA 65

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

PEDRO F. SOLER MUÑIZ, LUZANNE DOMENECH FAGUNDO
Recurridos

v.

AMERICAN PARKING SYSTEM, INC.
Recurrente

------------------------------------------

PEDRO F. SOLER MUÑIZ, LUZANNE DOMENECH FAGUNDO
Recurridos

v.

AMERICAN PARKING SYSTEM, INC.
Recurrente

Núms. Cons. KLRA-2007-00537 / KLRA-2007-00539

San Juan, Puerto Rico, a 30 de abril de 2008

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

Hernández Serrano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparecen por separado American Parking System, Inc. (en adelante, APS) y Universal Insurance Company (en adelante, Universal), mediante escrito de revisión judicial, y nos solicitan que revisemos la Resolución emitida por el Departamento de Asuntos del Consumidor (en adelante, el DACO) el 11 de mayo de 2007 y notificada el 14 de mayo siguiente. Mediante dicha Resolución, el DACO declaró Con Lugar la querella presentada contra éstos y los condenó a pagar solidariamente la suma de $10,162.98 por concepto de todos los daños, pérdidas y angustias sufridas por los recurridos, más los intereses correspondientes en caso de que incumplieran dentro del plazo concedido.

Las causas del epígrafe se encuentran íntimamente relacionadas. Ambos trámites surgen de una misma situación de hechos y se recurre de una misma Resolución. En aras de la economía procesal, se consolidan en este dictamen. Véase, Regla 80.1 del Reglamento del Tribunal de Apelaciones.

Por los fundamentos que adelante exponemos, se confirma la Resolución recurrida.

 

Para entender mejor la controversia ante nos, resumimos el trasfondo fáctico y procesal del caso, haciendo referencia a las determinaciones de hechos formuladas por la Agencia recurrida.

El 7 de octubre de 2005, el señor Pedro F. Soler Muñiz y su esposa Luzanne Domenech Fagundo (en adelante, los recurridos) llegaron aproximadamente a las 7:45 p.m. al Hotel Caribe Hilton en su automóvil nuevo BMW, modelo 530i, blanco del 2005.

Los recurridos salieron del automóvil y lo entregaron al empleado del servicio de valet parking de APS, quien luego de entregarles un recibo, se lo llevó a estacionar. Los recurridos se marcharon y se fueron a cenar a un restaurante sito en los predios del hotel.

Al terminar de cenar, alrededor de las 9:45 p.m. a 10:00 p.m., los recurridos se dirigieron a recoger su vehículo en el valet parking y le entregaron su boleto al dependiente de APS. Luego de esperar alrededor de 15 a 20 minutos por el vehículo, le inquirieron al supervisor de APS, el señor Alejandro Castañeda, por su vehículo. Éste llamó por radio a uno de sus empleados y preguntó por el automóvil de los recurridos, a lo que el empleado le indicó que se lo había entregado *"al señor de la camisa negra"*.

Luego de varias averiguaciones, el personal de APS se percató de que le habían entregado el automóvil de los recurridos a la persona equivocada, la que se había marchado del hotel con el mismo. En vista de ello, el personal de APS y del hotel dieron parte a la Policía y formalizaron una querella por robo de automóvil.

El automóvil fue recuperado por la Policía al día siguiente y entregado a los recurridos. El mismo no sufrió daños. La Policía arrestó y procesó judicialmente al señor Samuel Santos Rivera, quien fue convicto por el hurto de éste.

Al hacerles entrega del automóvil, los recurridos se percataron de que faltaban una serie de pertenencias que habían dejado en el vehículo. Dichas pertenencias fueron hurtadas. Éstas fueron: un reproductor digital de música (Ipod) valorado en $357.98 y un aditamento (cargador y *"radio adapter"*) valorado en $99.99. Igualmente, fueron hurtados del automóvil un teléfono celular marca Nokia, modelo 3210, valorado en $175.00, unas gafas valoradas en $145.00 y los controles remotos (*"beepers"*) de los portones de su residencia.

Los recurridos iniciaron una reclamación extrajudicial contra APS y contra Universal como su asegurada. No obstante, dichas reclamaciones no rindieron fruto, toda vez que ambas entidades, por diferentes razones, negaron responsabilidad.

Ante la negativa de APS de compensar los daños sufridos en el vehículo y su persona, los recurridos presentaron una querella ante el DACO En ésta alegaron haber sufrido pérdidas económicas a raíz del incidente antes mencionado y pidieron ser compensados con la cantidad de $20,000.

Celebrada la correspondiente vista administrativa el 15 de marzo de 2007, el DACO concluyó que:

"...

*El personal de American Parking debió tomar medidas encaminadas a asegurarse de que estaban entregando el automóvil a su dueño y no a otra persona, como en efecto sucedió. El grado de negligencia, descuido y falta de diligencia desplegado por el personal de American Parking resulta inexcusable. Definitivamente, American Parking no actuó como buen padre de familia.*

..."

Por tal razón, el DACO determinó que APS y Universal, solidariamente, deberían pagar a los recurridos la suma de $10,162.98 por concepto de todos los daños, pérdidas y angustias sufridas como consecuencia de los hechos acaecidos en el caso de marras, más los intereses correspondientes en caso de que incumplieran dentro del plazo concedido. Adicionalmente, APS debería pagar a los recurridos la suma de $3,000 por concepto de honorarios de abogados.

Inconforme con dicha determinación, APS acudió ante nos el 21 de febrero de 2008, y Universal el 26 de febrero de 2008. Por una parte, Universal plantea que el DACO cometió el siguiente error:

*"Erró el DACO en su apreciación de la prueba oral al determinar que la póliza expedida por Universal cubre los daños reclamados y que la exclusión levantada no aplica.*

*A su vez, APS plantea la comisión de los siguientes errores:*

*"Erró el DACO al determinar un pago de $10,162.98 por concepto de todos los daños, pérdidas (sic) y angustias mentales cuando de la vista sólo surge evidencia de $2,232.97.*

*Erró el DACO al imponer honorarios de abogados en ausencia de temeridad y/o frivolidad."*

Con el beneficio de haber evaluado la totalidad de la prueba, así como los escritos presentados por las partes y la normativa aplicable, estamos en posición de resolver. Veamos.

## II

La Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Estado libre Asociado de Puerto Rico"*, en su Sección 4.5, establece los límites de la revisión judicial de decisiones administrativas y dispone que las determinaciones de hechos de las agencias serán sostenidas por el Tribunal si se basan en evidencia sustancial que obre en el expediente administrativo. 3 L.P.R.A. sec. 2175. Por tanto, estamos obligados a sostener tales determinaciones, si están respaldadas por evidencia suficiente que surja del expediente administrativo considerado en su totalidad. *Otero v. Toyota*, 163 D.P.R. ___ (2005), **2005 J.T.S. 13**; *Metropolitana S.E. v. A.R.P.E.*, 138 D.P.R. 200 (1995). Las determinaciones de hechos de las agencias administrativas tienen a su favor una presunción de corrección que no debe ser descartada a menos que se presente evidencia suficiente para derrotarlas. *Id.* Asimismo, debe respetarse el dictamen de un foro administrativo en cuanto a la credibilidad de los testigos. La agencia tuvo ante sí la evidencia. Su determinación, basada en la apreciación y credibilidad de la prueba, merece deferencia por parte de los tribunales. Si bien es cierto que la prueba presentada puede llevar a varias determinaciones razonables, es la agencia la que determinará la adecuada y no el Tribunal de Apelaciones. Si no fuese de esta forma, las agencias administrativas perderían su razón de ser. (Énfasis nuestro). *Id; Mun. de San Juan v. J.C.A.*, 152 D.P.R. 673 (2000); *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908 (1998); *Fac. C Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993).

Sin embargo, las conclusiones de derecho de los organismos administrativos que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia concernida, son revisables en toda su extensión. *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997). Como regla general, los tribunales deben darle peso a las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor, pero aun esta deferencia judicial al *"expertise"* administrativo cede ante una actuación irrazonable o ilegal. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70 (1999).

En resumen, la revisión judicial de las determinaciones administrativas está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si, por el contrario, fue irrazonable, ilegal o si medió abuso de discreción. *T-JAC, Inc. v. Caguas Centrum Limited, supra; Rivera v. A*

& C Development Corp., supra.

La Ley Núm. 120 de 7 de junio de 1973, según enmendada, conocida como *"Ley para Regular el Negocio de Áreas para el Estacionamiento Público de Vehículos de Motor"*, 23 L.P.R.A. 812, y el Reglamento Operacional Núm. 1 del DACO, conocido como *"Reglamento de Operación de Áreas de Estacionamiento"*, regulan todo lo concerniente a la responsabilidad de los negocios de estacionamientos públicos operados en Puerto Rico.

De acuerdo con el mencionado estatuto, el Secretario del DACO tiene jurisdicción primaria para resolver cualquier reclamación que tenga un usuario en contra del operador de un área de estacionamiento público cuando ésta surja de daños y perjuicios sufridos por el vehículo del usuario. Art. 8, Ley Núm.120, *supra*; *P.R. Parking Corp. v. ASERCO*, 103 D.P.R. 65 (1974).

Asimismo, éste dispone que el operador o dueño de un establecimiento operado con ánimo directo de lucro actúa como depositario del vehículo del usuario. La jurisprudencia interpretativa de dicha disposición ha establecido que existe una presunción de contrato de depósito que favorece al usuario al imponerle al operador la carga de establecer que tomó las medidas necesarias y diligentes, como un buen padre de familia, al custodiar el objeto entregado en depósito. Véase, *M. A. Carib. Corp. v. Carib. R., Inc.*, 115 D.P.R. 681 (1984); *Acevedo v. Plaza Las Américas, Inc.*, 109 D.P.R. 311 (1980).

Reiteradamente, nuestro más Alto Foro ha resuelto que las determinaciones de los organismos administrativos especializados merecen gran consideración y respeto. *Misión Ind. P.R. v. J.C.A.*, *supra*; *San Vicente v. Policía de P.R.*, 142 D.P.R. 1 (1996); *Metropolitana, S.E. v. A.R.P.E.*, 138 D.P.R. 200 (1995); *Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947 (1993).

En nuestra jurisdicción, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil, el cual dispone:

*"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".*

31 L.P.R.A. § 5141.

Al interpretar el mencionado artículo la jurisprudencia ha establecido que la persona que por acción u omisión cause daño a otro por su culpa o negligencia, estará obligada a reparar el daño causado, siempre que concurran tres elementos básicos: 1) la presencia de un daño en el demandante; 2) que ese daño haya surgido a raíz de un acto u omisión culposa o negligente del demandado; y 3) que exista un nexo causal entre el daño sufrido y dicho acto u omisión. *López v. Porrata Doria*, 169 D.P.R. ___ (2006), **2006 J.T.S. 158**. *Hernández v. Televicentro*, 168 D.P.R. ___ (2006), **2006 J.T.S. 151**.

En cuanto al elemento de daños dentro de la responsabilidad civil extracontractual, el Tribunal Supremo de Puerto Rico ha señalado que el mismo es uno sumamente abarcador. A esos efectos lo ha definido, citando a Luis Díez-Picazo, como *"el menoscabo que a consecuencia de un acaecimiento o evento determinado sufre una persona en sus bienes vitales o naturales, en su propiedad o en su patrimonio"*. *Rivera v. S.L.G. Díaz*, 165 D.P.R. ___ (2005), **2005 J.T.S. 121**; Véase, además, L. Díez-Picazo, *Derecho de Daños*, Ediciones Civitas S.A., Madrid, España, 1999, a la pág. 307.

Nuestro ordenamiento jurídico reconoce la existencia de dos tipos de daños. *Cintrón Adorno v. Gómez*, 147 D.P.R. 576 (1999). Por un lado se encuentran los daños especiales -también conocidos como daños físicos,

patrimoniales, pecuniarios o económicos-, que son toda aquella pérdida que recae sobre bienes objetivos. Estos daños admiten valoración económica por impactar directamente el patrimonio del perjudicado. J. Santos Briz, *Derecho de Daños*, Madrid, Ed. *Revista de Derecho Privado*, 1963, pág. 120. Del otro lado, existen los llamados daños morales que son los infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado. El daño moral lesiona los bienes no económicos de la persona, pero a pesar de no recaer directamente sobre el patrimonio, indirectamente podrían repercutir en éste, causando una perturbación anímica en su titular. *Id.* En consecuencia de ello, también debe admitir valoración económica.

A pesar de esto, existen defensas oponibles, en relación a la indemnización por daños; entre éstas se encuentra la doctrina de mitigación de daños. Esta postula el deber que tiene una persona que sufre perjuicios de adoptar aquellas medidas razonables pertinentes y a su alcance, tendentes a reducir el monto de los daños realmente causados. En esencia y por propia definición, su aplicabilidad presupone la existencia y realidad de un daño, pues de lo contrario nada habría que mitigar. Para aplicar la doctrina, hay que evaluarla a la luz de las circunstancias particulares de cada caso, no existiendo fórmula mágica ni matemática que permita aplicarla con facilidad. *Fresh-O-Baking Co. v. Molinos de P.R.*, 103 D.P.R. 509 (1975); *Aponte v. Cortés Express*, 101 D.P.R. 31 (1973).

Además, se ha establecido que el planteamiento sobre no mitigación de daños debe ser levantado como defensa afirmativa al contestar la demanda; o de lo contrario, se tendrá por renunciada. No obstante, si se presenta prueba que demuestre que los daños se agravaron por la no mitigación, dicha defensa queda incorporada a las alegaciones de la parte demandada por enmienda implícita. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985); *Fresh-O-Baking Co. v. Molinos de P.R., supra.*

Por otra parte, en cuanto se refiere a la valoración del daño, el juzgador debe valuar y mensurar los mismos en estricta correlación con la prueba presentada, procurando mantener un sentido remediador. (Énfasis nuestro). Véase, *Rivera v. S.L.G. Díaz, supra; S.L.G. v. F.W. Woolworth & Co.*, 143 D.P.R. 76 (1997). En cuanto a la evaluación de la evidencia, en reiteradas ocasiones, el Tribunal Supremo ha expresado que le corresponde al tribunal sentenciador -en este caso al ente administrativo-, sopesar la prueba ofrecida y dirimir su credibilidad. En razón de ello, se ha establecido que en asuntos de credibilidad de la prueba concederá gran deferencia a las determinaciones de hechos efectuadas por los tribunales de instancia -al foro administrativo-. Sin lugar a dudas, el juez -oficial examinador- que vio y oyó la prueba es quien en mejor posición está para creerla o no creerla. Véase, *Pueblo v. Torres Rivera*, 137 D.P.R. 630 (1994). Se impone un respeto a la aquilatación de credibilidad del foro primario en consideración a que, de ordinario, *"sólo tenemos récords mudos e inexpresivos"*. Véase, *Trinidad v. Chade*, 153 D.P.R. 280 (2001); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984).

De otra parte, es el inciso (d) de la Regla 44, el que dispone todo lo concerniente a los honorarios de abogado. Señala en lo pertinente, que en caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

El concepto *"temeridad"* ha sido ampliamente definido por el Tribunal Supremo de Puerto Rico. En términos generales, se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. De igual forma, existe temeridad cuando un demandado se defiende injustificadamente de una acción, cuando se arriesga a litigar un caso del que se desprendía a *prima facie* su negligencia y al negar hechos que le consten son ciertos. Véase, *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987).

El propósito fundamental de la imposición de honorarios de abogado es penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de

fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajos y consecuencias de un litigio innecesario. (Énfasis nuestro). *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994).

### III

Por estar íntimamente relacionados los primeros dos errores, procederemos a discutirlos en conjunto. Los mismos están dirigidos a cuestionar específicamente la apreciación de la prueba testifical que hiciera el juzgador y la suficiencia de la prueba en general.

Alega Universal que el DACO erró en su apreciación de la prueba oral al determinar que la póliza expedida por estos cubría los daños reclamados y que la exclusión levantada no era de aplicación. De otra parte, es contención de APS que erró la agencia al determinar un pago de $10,162.98 por concepto de todos los daños, pérdidas y angustias mentales cuando de la vista solo surgió evidencia de $2,232.97. No les asiste razón.

El DACO tuvo ante sí la referida póliza de seguros. De igual manera, tuvo la oportunidad de evaluar el testimonio del Lcdo. José R. Ortiz Rodríguez (en adelante, el Lcdo. Ortiz), Vicepresidente Auxiliar de Reclamaciones de Universal. De dichas declaraciones se desprende que no existe cláusula alguna en el contrato de seguros que excluya expresamente las partidas de lucro cesante, daños y angustias emocionales.

En la vista administrativa, el Lcdo. Ortiz declaró lo siguiente:

"...

*P. La pregunta que yo le hago y escúchela bien, es que si hay una... ¿La póliza excluye expresamente, según sus términos, lucro cesante como es este caso? Y si eso es cierto señálenos dónde.*

*R. Vuelvo otra vez, no va a encontrar una exclusión de lucro cesante.*

..."

Véase pág. 186 de la trascripción de la vista.

Asimismo declaró:

"...

*P. A toda la póliza nos estamos refiriendo. Si en algún lado, y escuche bien la pregunta porque es bien para que nos conteste bien. ¿Si en alguna de la parte de la póliza hay una exclusión expresa que diga esta póliza no cubre daños y angustias emocionales?*

*R. La interpretación de Universal...*

*P. "Okay". La pregunta... Antes, estamos saltando. ¿La hay o no la hay?*

*R. No va a encontrar una exclusión sobre ese...*

*P. Esa no la hay. O sea, ¿Qué ustedes interpretan del contenido de la póliza que eso estaba excluido?*

*R. De los términos y condiciones, de las definiciones de los términos "bodily injury" y "property damage" vista desde un contexto completo de la póliza.*

...".

Véase pág. 188 de la trascripción de la vista.

Igual oportunidad tuvo de declarar el señor Rafael Cruz, Director de Seguridad del Hotel Caribe Hilton. Asimismo, los recurridos también testificaron, lo que nos lleva a la alegación de APS en referencia a que de la vista sólo surgió evidencia de los daños por la cantidad de $2,232.97. Dicha alegación es errónea.

Los recurridos declararon sobre los objetos que dejaron en el automóvil y los cuales desaparecieron, a consecuencia del robo. En el expediente obran facturas que acreditan varias de las cuantías reclamadas. Además, se pasó prueba, mediante testimonio de los recurridos, de los restantes daños reclamados, incluyendo los daños emocionales sufridos a raíz del incidente.

Lo cierto es que, al igual que éstos, tanto Universal como APS, presentaron su prueba y a la misma se le impartió la credibilidad que la agencia consideró apropiada y procedente. Es luego de aquilatada la prueba presentada ante sí, que el DACO entendió que la póliza expedida por Universal cubría los daños sufridos por los recurridos.

Existiendo evidencia sustancial que obra en el expediente, en apoyo de las conclusiones hechas por el DACO y en virtud del respeto que el DACO le otorgó a la prueba testifical, concluimos que dicha determinación de la agencia es razonable y en consecuencia la sostenemos.

Por último, nos señala APS que la determinación del DACO de imponerle los honorarios de abogados fue una errada. No le asiste la razón. En el uso de su discreción, el DACO impuso una cantidad de honorarios de abogado, cantidad que no nos parece inadecuada ni excesiva. En términos generales, se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. También existe temeridad cuando un demandado se defiende injustificadamente de una acción, cuando se arriesga a litigar un caso del que se desprendía prima facie su negligencia, al negar los hechos que le constan son ciertos. *Fernández v. San Juan Cement Co., Inc., supra.*

Colegimos de esta manera que, a base del trasfondo fáctico del caso y el derecho antes esbozado, el tribunal sentenciador no abusó de su discreción, actuando de esta forma de modo correcto al determinar que correspondía la imposición de honorarios de abogado.

**IV**

Por los fundamentos que anteceden, se confirma el dictamen emitido por el DACO.

Notifíquese.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones